## THE STATE v. HARROUN, Appellant.

Division Two, December 2, 1906.

1. **INDICTMENT: Statutory Offense: Words of Similar Import.** While an indictment for a statutory offense should follow the language of the statute, it is not absolutely essential to a good indictment that it use the exact words of the statute, but words of similar import, not repugnant to the words of the statute, may be employed.

2. ———: ———: ———: **"Cheat" and "Injure:" Forgery: Surplusage.** The language of the statute (sec. 2009, R. S. 1899) is, "Every person who, with intent to injure or defraud," etc. The indictment uses the language, "with intent to cheat and defraud." *Held*, that, in this connection, the word "cheat," used in the indictment, is of similar import to the word "injure," used in the statute, and is not repugnant to "defraud," the other word used in the statute. *Held*, also, that the word "cheat" may be regarded as surplusage, and the indictment still be good, since the gravamen of the offense is the intent to "defraud."

3. ———: **Forgery: Bill of Lading: Pecuniary Obligation: Rights of Property.** An indictment for forgery of a bill of lading which undertakes to cover the provisions of the statute (sec. 2009, R. S. 1899), both in regard to pecuniary obligations and property rights, *held*, invalid, since, first, the bill of lading is not a pecuniary obligation; and, second, the indictment fails to allege in what way rights of property were affected by the alleged forgery.

4. ———: ———: ———: **Signature.** An indictment for forgery of a bill of lading which gives the signature of the bill as "W. K. Adams, M. Freight Agent," should allege that it meant W. K. Adams per or by the party for whom M. stands.

5. ———: **Language of Statute.** The rule that an indictment in the language of the statute is sufficient applies only where all the facts which constitute the offense are set forth in the statute.

Appeal from Buchanan Criminal Court.—*Hon. A. D. Burnes,* Special Judge.

REVERSED AND REMANDED.

*Duncan & Utz, W. B. Norris* and *W. M. Williams* for appellant.

The indictment is defective and insufficient to support the judgment, and the motion in arrest should have been sustained. State v. Fay, 65 Mo. 490; State v. Chinn, 142 Mo. 507; Polk v. State, 51 S. W. 909; Bynum v. State, 17 Oh. St. 143; Carberry v. State, 11 Oh. St. 414; Joiner v. State, 80 S. W. 531; Mayer v. State, 85 S. W. 802; Thulemeyer v. State, 43 S. W. 83. (a) There is nothing upon the face of the bill of lading to show that said Adams, whose name is signed thereto, was acting by said W. A. Mueller, as alleged in the indictment. The letter "M" in and of itself is not sufficient for that purpose. It might mean many different things or stand for a number of names other than that of W. A. Mueller. State v. Fay, supra; State v. Chinn, 142 Mo. 513; Bynum v. State, 17 Oh. St. 143; Carberry v. State, 11 Oh. St. 414; Polk v. State, 51 S. W. 909. (b) The statute in defining forgery in the third degree requires that the act must be done with "intent to injure or defraud." R. S. 1899, sec. 2009. The indictment does not follow the language of the statute. It charges that the act was done "with intent then and there to cheat and defraud," thereby substituting the word "cheat" for the word "injure." State v. Miller, 132 Mo. 300.

*Herbert S. Hadley,* Attorney-General, and *N. T. Gentry,* Assistant Attorney-General, for the State.

Defendant is charged with the crime of forgery in the third degree, to-wit, the forgery of a certain bill of lading purporting to be the act of the Chicago, Burlington & Quincy Railway Company. Section 2009 is broad enough to include the forging of a bill of lading, or warehouse receipt, or any other obligation whereby the rights or property of another shall be, or purported to be, transferred, created, etc. State v. Gullette, 121 Mo. 447.

BURGESS, P. J.—The defendant was convicted in the criminal court of Buchanan county of forgery in the third degree and his punishment fixed at five years imprisonment in the penitentiary under an indictment preferred against him by the grand jury of said county charging him with falsely making a bill of lading purporting to be the act of the Chicago, Burlington & Quincy Railroad Company, a corporation, for the carriage and transportation of sixty thousand pounds of wheat of the value of five hundred dollars, from St. Joseph, Missouri, to Chicago, Illinois, with the intent to cheat and defraud. After unavailing motions for a new trial and in arrest, defendant appeals.

Hon. B. J. Casteel, the regular judge of said court, being disqualified, the Hon. A. D. Burnes, judge of the fifth judicial circuit, was called in by him to try the cause.

The facts are about as follows: The defendant at the time of and for some time prior to the commission of the alleged offense was engaged in the grain and elevator business at St. Joseph, Mo. During all this time W. K. Adams was the local freight agent of said company at said city and one W. E. Mueller, was the chief clerk in Adams' office; it was customary when freight was received by said railroad company for Mr.

Adams to execute a bill of lading therefor, signing the name "W. K. Adams, freight agent, per M.," thereto; sometimes the bill of lading was signed "W. K. Adams, freight agent, per Mueller," and sometimes W. K. Adams, freight agent, M." The State's evidence tended to show that a number of bills of lading were forged by the defendant, including the one described in the indictment, and that the defendant admitted to various officers of said railroad company that he had forged said bills of lading, some of which were in possession of other persons not known to the defendant. These statements were made by the defendant at the office of the general freight agent of the Burlington road, at St. Joseph, at the defendant's residence in St. Joseph, and at another place in St. Joseph. He asked these gentlemen to keep the matter quiet and to suppress a certain telegram that had been received in regard to a certain outstanding forgery. Defendant gave the railroad officers a list, which list showed that bills had been forged for freight worth $124,000. He then took a pen and, in the presence of Judge O. M. Spencer and others, showed how he could imitate the signature of Mr. Adams as signed by Mueller. It afterwards developed that said bills of lading, instead of amounting to freight worth $124,000, in reality amounted to $156,-000. Adams and Mueller both testified that the signature to the bill of lading described in the indictment was not signed by Mr. Mueller.

The defendant's evidence tended to show that while he had been guilty of forging other bills of lading and warehouse receipts, he did not forge the one described in the indictment; and that the Burlington Railroad Company never lost anything by reason of said alleged forgery. He also introduced evidence tending to show that he enjoyed a good reputation for honesty and integrity prior to and since the commission of the alleged crime. The defendant's evidence further tended to show that Mueller, a witness for the State, had

made contradictory statements and had made conflicting statements in his efforts to distinguish between the alleged forged bill of lading and others which were genuine.

The indictment, leaving off the formal parts, is as follows:

"The grand jurors of the State of Missouri, within and for the body of the county of Buchanan aforesaid, being duly empaneled and sworn, upon their oaths do present that W. H. Harroun, on the 2nd day of September, 1904, at the county of Buchanan and State aforesaid, feloniously did falsely make and forge a certain instrument of writing and bill of lading purporting to be the act of Chicago, Burlington & Quincy Railway Company, a corporation incorporated under and by virtue of the laws of the State of Iowa, by one W. K. Adams, its agent and servant, having authority so to do, the said W. K. Adams acting by one W. A. Mueller, the said W. A. Mueller having authority thereof, he, the said W. A. Mueller, being then and there the servant and agent of said corporation and said W. K. Adams. And the said purported act of said Chicago, Burlington & Quincy Railway Company, by its agents and servants, said W. K. Adams and said W. A. Mueller, to-wit, the said false and forged instrument of writing and bill of lading, purported to have created and transferred a pecuniary demand and obligation for the payment of sixty thousand pounds of wheat of the value of five hundred dollars, and the right of property in and to said wheat purported to be transferred and conveyed by the said Chicago, Burlington & Quincy Railway Company, which said false and forged instrument of writing and bill of lading is of the tenor following, to-wit:

C 2-04 100 M

Chicago, Burlington & Quincy Railroad.

Burlington & Missouri River Railroad in Nebraska.

Keokuk & Western Railroad.

Form —

**Burlington Route**

Standard

Hannibal & St. Joseph Railroad.

St. Louis, Keokuk & North-Western Railroad.

Kansas City, St. Joseph & Co. Bluffs Railroad.

Chicago, Burlington & Kansas City Railroad.

# BILL OF LADING
### ISSUED BY
## CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY,
### LESSEE OF THE LINES ENUMERATED ABOVE.

*St. Joseph, Mo. Aug 26 1904* ................190......

Received from *Missouri Valley Grain and Export Co.*

in apparently good order by the Chicago, Burlington & Quincy Railway Company, the following described property (contents and value unknown) consigned as marked and numbered in the margin, upon the terms and conditions hereinafter contained, and which are hereby made a part of this agreement; also subject to the conditions and regulations of the published tariffs in use by the Chicago, Burlington & Quincy Railway Company, to be transported over the lines of the Chicago, Burlington & Quincy Railway Company, to destination, if on the line of said Chicago, Burlington & Quincy Railway Company. If destination is not on the line of the Chicago, Burlington & Quincy Railway Company, delivery or tender to be made at any convenient station on the line of the Chicago, Burlington & Quincy Railway Company to a connecting carrier; whereupon all further liability of the Chicago, Burlington & Quincy Railway Company shall cease.

Goods in bond subject to Custom House regulations and expenses.

In the event of the loss of or damage to any property for which the carriers may be responsible under this Bill of Lading, the value or cost of same at the point and time of shipment is to govern in the settlement for the same, unless the value of the property has been otherwise agreed upon with the shipper, or is determined by the classification upon which the rates are based, and in *Original* case of loss of or damage to any of the property named in this Bill of Lading, for which the Chicago, Burlington & Quincy Railway Company may be liable, it is provided that the Chicago, Burlington & Quincy Railway Company may have the benefit of any insurance effected by or on account of the owner of said property.

It is further provided that no claim for loss or damage to property shipped under this contract shall be valid against the Chicago, Burlington & Quincy Railway Company, unless the claim for such loss or damage shall be verified by affidavit and delivered to a General Freight Agent of the Chicago, Burlington & Quincy Railway Company, or to the agent of the Chicago, Burlington & Quincy Railway Company, at the place of destination or delivery of such property within ten (10) days from the time said property was delivered to consignee. In case of total loss of said property, claim shall be made as aforesaid, within ten (10) days after the owner has received notice from any source of said loss.

All carload freight shall be subject to a minimum charge for trackage and rental of $1 00 per car for each 24 hours detention or fractional part thereof, after the expiration of 48 hours from its arrival at destination, and the carrier shall have the same lien, and to the same extent upon the property for such charges, as for the transportation charges. ERASURES OR ALTERATIONS ARE NOT TO BE MADE ON THIS RECEIPT.

*Shippers order notify*

| MARKS AND CONSIGNESS | No. Pkgs | DESCRIPTION OF PROPERTY AS GIVEN BY CONSIGNOR | Weight Subject to correction |
|---|---|---|---|
| *Armour Grain Co* | | | |
| | | *Bulk wheat* | 60 000 |
| *Chicago, Ills* | | | |
| | | | |
| | | *C B & Q. 26851* | |

| RATES | | | |
|---|---|---|---|
| From ............................. | | | |
| To ............................. | | | |
| If 1st Class........ ........cts. per 100 lbs. | | | |
| " 2d Class.................... " " " | | | |
| " 3d Class.................... " " " | | | |
| " 4th Class.................... " " " | | *Weighed by Western Ry* | |
| " 5th Class.................... " " " | | | |
| " Special Class........ ...... " " " | | *Weighing Ass'n* | |
| " Double First Class. ...... " " " | | | |
| " ............................. | | | |
| " .............................bbl | | | |
| " *Proportional Bal* " " car | 12 c | 9 25 | |

Freight may be collected upon the weight by the Company's Scales, but no single shipment consisting of one or more classes will be taken for less than the Minimum charge as provided for in the governing tariffs.

Carload freight subject to the current rules as to minimum and maximum weights.

Charges advanced, (if any)............... ..

*W. K. Adams*

.............................

**Freight Agent**

Subject to Classification, Rules and Regulations of Connecting Roads *M*

With intent then and there and thereby feloniously to cheat and defraud; against the peace and dignity of the State.''

The indictment is assailed upon the ground that it fails to set out in the language of the statute the nature of the offense sought to be charged against the defendant, in that it alleges that "the said false and forged instrument of writing and bill of lading purported to have created and transferred a pecuniary demand and obligation for the payment of sixty thousand pounds of wheat of the value of five hundred dollars and the right of property in said wheat purporting to be transferred and conveyed by the said Chicago, Burlington & Quincy Railway Company, which said false and forged instrument of writing and bill of lading is of the tenor following, to-wit, with intent then and there and thereby feloniously to '*cheat*' and defraud.'' In a word, it is claimed that the indictment is bad because it uses the words, "with intent to *cheat* and defraud," instead of "with intent to *injure* and defraud." That is, that the word "*cheat*" is substituted for the word "injure." The language of the statute (sec. 2009, R. S. 1899) is, "Every person who, with intent to injure or defraud" etc., and it would have been good pleading to have alleged, "injure and defraud," conjunctively.

With respect to indictments for statutory offenses, the general rule is that the indictment must follow the language of the statute, but it is not *absolutely* necessary to a good indictment that it use the exact words of the statute if words of similar import are employed. Thus, in State v. Batson, 31 Mo. 343, in an indictment for grand larceny in alleging ownership of the property stolen it was held not necessary to use the exact words of the statute, if words of a similar import are employed, as goods and chattels of one B. instead of "belonging to" B.

In State v. Watson, 65 Mo. 115, it was ruled that an indictment need not describe the offense in the lan-

guage of the statute, but may use words which, in their common acceptation, mean the same thing when spoken of the acts charged against the accused. The court said:

"It will be observed that it contains every material allegation required by that section; but instead of the words 'pass,' 'utter' and 'publish' substitutes the words 'sell,' 'exchange' and 'deliver.' Do these words, in connection with the acts charged, sufficiently describe the offense, or is the pleader confined to the words in the section? It is generally, not, however, invariably, sufficient to describe the offense in the words of the statute; but it does not follow that other words may not be substituted. Selling, exchanging or delivering a bank bill or a piece of money is in common parlance passing the bill or money. The plain or ordinary and usual sense of the word 'pass,' as applied to coin or bank notes, is to deliver in exchange for something else, and is equally expressed by the words 'sell,' 'exchange' or 'deliver.' ''

So, in State v. Mills, 146 Mo. 195, it was held that ordinarily in charging a statutory offense the words of the statute should be used. But that is not indispensably necessary. It is sufficient if the offense be set forth with substantial accuracy and reasonable certainty. GANTT, J., in speaking for the court, said: "Authorities are numerous that while ordinarily, in charging a statutory offense, the words of the statute should be used, it is not indispensably necessary to do so. It is sufficient if the offense be set forth with substantial accuracy and reasonable certainty. [United States v. Bachelder, 2 Gall. (U. S.) 15; State v. Pennington, 3 Head (Tenn.) 119; State v. Little, 1 Vt. 331; State v. Bullock, 13 Ala. 413; State v. Watson, 65 Mo. 115.]''

But the words used in lieu of the words in the statute must be of similar import and not repugnant thereto, or to other words used in the statute constituting the offense. If, then, the word "cheat," as used in the

indictment, is of the same import as the word "injure," used in the statute, and is not repugnant to the word "defraud," as therein used, the position of defendant in this regard cannot be maintained.

One of the definitions of "injure" given in Webster's Unabridged Dictionary is, to impair; to violate or to injure rights. In the Century Dictionary, it is defined as follows: "To do harm to; inflict a damage or detriment upon; impair or deteriorate in any way; subject to any deleterious or nauseous action or influence; a word of very wide application." As it is used in the statute in connection with "defraud," it must mean injury to property or property rights, as distinguished from injury to the person or personal rights; otherwise, it is meaningless in the connection in which it is used. Being a word of very wide application and found in the statute with respect to the forging of pecuniary obligations of another or by which any rights of property may be affected, with intent to injure or defraud, we feel justified in giving it the meaning indicated, which we also think is borne out by the definitions quoted.

The word "cheat," in its common acceptation, is a word of similar import, because to cheat or defraud one of his property rights is to injure such rights. We do not intend to be understood, however, as saying that the word "injure" and the word "cheat" may be used interchangeably, but that the latter word being of similar import as the former, the indictment was not vitiated by reason of the substitution of "cheat" for injure. Nor is "cheat" repugnant to "defraud," as they in this instance mean substantially the same thing.

Moreover, the word "cheat" may be regarded as surplusage and the indictment still be good, although it omits the word "injure," for an indictment will not be held defective, if, after striking out the objectionable and immaterial portions as surplusage, enough still

remains to constitute a valid and substantial indictment. [State v. Nations, 75 Mo. 53.]

Bishop says: "If, as is common in legislation, a statute makes it punishable to do a particular thing specified, 'or' another thing, 'or' another, one commits the offense who does any one of the things, or any two, or more, or all of them. And the indictment may charge him with any one, or with any large number, at the election of the pleader; employing, if the allegation is of more than one, the conjunction 'and' where 'or' occurs in the statute. 'The rule,' it was once observed, 'is undoubtedly limited in its application to cases where the offenses created in a statute are not repugnant.' And whatever be the form of the allegation, the proofs need sustain only so much of it as constitutes a complete offense." [Bishop on Statutory Crimes (3 Ed.), sec. 244.]

The same author says: "To repeat what was explained in another connection, if a statute makes criminal the doing of this, or that, mentioning several things disjunctively, there is but one offense, which may be committed in different ways; and in most instances all may be charged in a single count. But the conjunctive 'and' must ordinarily in the indictment take the place of 'or' in the statute, else it will be ill as being uncertain. And proof of the offense in any one of the ways will sustain the allegation. On the other hand, the indictment may equally well charge what comes within a single one or more classes, less than all, of the statute, and still it embraces the complete proportions of the forbidden wrong." [1 Bishop's New Criminal Proc., sec. 586.]

It seems to follow from the authorities that the indictment may be held good although it does not allege that the forgery was committed with intent to "injure," and the word "cheat" we disregard as surplusage, as it very properly may be. The gravamen of the offense was the "intent to defraud," and it was necessary to

allege in the indictment that the forgery was with the intent to defraud.

It is also insisted that the indictment is insufficient in that it does not charge the defendant with forging an instrument by which property rights purported to be transferred, conveyed, discharged, increased, etc., by the forging of said bill of lading. The statute reads (sec. 2009, supra), "Every person who, with intent to injure or defraud, shall falsely make, alter, forge or counterfeit any instrument of writing, being or purporting to be the act of another, by which any pecuniary demand or obligation shall be or purport to be transferred, created, increased, discharged or diminished, *or by which any rights or property whatsoever shall be or purport to be transferred, conveyed, discharged, increased, or in any manner affected," etc.* The argument is that the indictment is based upon the first clause of the statute, "pecuniary demand or obligation," and does not charge the defendant with forging an instrument by which property rights purported to be transferred. It seems to undertake to cover both provisions of the statute, that is, the one with respect to the forgery of pecuniary obligations and the one with respect to property rights, although they are entirely separate and distinct offenses and could not be joined in the same count. It is clear that the bill of lading is not a pecuniary obligation. The indictment should have been bottomed upon that provision with respect to property rights alone, but, as it is, it is indefinite, inconsistent with itself and uncertain.

We may also add that as the statute does not define the offense, the indictment should allege in what way rights of property were affected by the falsely making or forging said bill of lading in the absence of which defendant could not have prepared to defend against a charge so general in its nature. [State v. Krueger, 134 Mo. 262, and authorities cited.] It may, however, be

199 Sup.—34

said that the indictment is in the language of the statute and therefore sufficient. "But this rule only applies where all the facts which constitute the offense are set forth in the statute." [State v. Davis, 70 Mo. 467; State v. Kesslering, 12 Mo. 565; State v. Hayward, 83 Mo. 304; State v. Krueger, supra.] And with respect to the signature to the bill of lading it should be alleged that the name thereto, signed, "W. K. Adams, M. Freight Agent," means W. K. Adams, per or by W. A. Mueller.

As the indictment is invalid, it follows that the instructions based upon it are erroneous.

The conclusion reached renders it unnecessary to pass upon other questions presented for consideration, as they may not arise again upon another trial, should one be had.

The judgment is reversed and the cause remanded. All concur.