State v. Dargatz.

---

## THE STATE v. EMIL DARGATZ, Appellant.

### Division Two, June 20, 1912.

1. **ABORTION: Information: Act Necessary to Preserve Life.** An information charging that in attempting to produce the miscarriage or abortion defendant was not "engaged in any act necessary to preserve the life of Marion Hawkins or that of an unborn child" uses words equivalent to a charge that the criminal acts of the defendant were not necessary to preserve the life of Mrs. Hawkins or that of an unborn child, and is sufficient. It is not necessary that an information should follow the precise language of the statute.

2. ———: **Demurrer to Evidence.** Testimony by the husband of the woman upon whom defendant performed the operation that he employed defendant for the sole purpose of destroying pregnancy, and that at the time the operation was performed defendant stated that she was in a healthy condition and ought to soon recover, and testimony by the coroner and others that the woman become violently sick about twenty-four hours after the operation and died some ten hours later, made out a prima facie case of manslaughter, and is sufficient to sustain the verdict, notwithstanding defendant testified that his treatment was necessary to relieve the woman of a dead fœtus and to preserve her life, and other physicians testified that she would not have died from an attempted abortion alone in so short a time as thirty or forty hours.

State v. Dargatz.

3. ————: Instruction: Felony of Abortion. Where the informa-
tion charges that the defendant produced the death of the
woman by his unlawful acts in inserting instruments into her
womb, the instructions should not authorize the jury to convict
defendant of the "felony of abortion." Such an information
charges manslaughter in the second degree, and the "felony of
abortion" as defined by Sec. 4458, R. S. 1909, is not included
within that charge. That offense includes acts which did not
result in the death of the woman. The two offenses are in-
consistent and cannot be charged in the same information;
nor can a defendant charged with the offense of manslaughter
in the second degree as denounced by the statute, be convicted
of the "felony of abortion" as denounced by the statute, though
it consists of an attempt to commit manslaughter in the second
degree.

4. ————: Information: Amendment: Re-arraignment. A failure
to re-arraign the defendant after the amendment of the informa-
tion in an immaterial matter is not error; and in this case it
is held that the insertion of the word "felonious" before the
word "intent" was not a material amendment, because with-
out that word the information contains every necessary aver-
ment.

5. ————: Verdict: General. A general verdict is sufficient in
a prosecution for manslaughter in the second degree com-
mitted in an attempt to produce a miscarriage or abortion upon
a woman. ·

Appeal from Jackson Criminal Court.—*Hon. Ralph S.
·Latshaw,* Judge.

REVERSED AND REMANDED.

*Benjamin F. White* and *Isaac B. Kimbrell* for ap-
pellant.

(1) Defendant should have been arraigned af-
ter the amended information was filed. State v. Hoff-
man, 70 Mo. App. 271; State v. Sovern, 225 Mo. 580;
State v. Bloedow, 45 Wis. 279; State ex rel. v. Shields, ·
230 Mo. 103. The insertion of the word "felonious"
before the word "intent" was essential, and if that
made an indictment good that otherwise was bad, de-
fendant should thereupon be arraigned. (2) The in-
formation is defective. The words of the statute "un-

less the same is necessary to preserve her life or that of an unborn child'' mean that miscarriage or abortion are the matters that must be necessary to preserve her life and here the words "miscarriage," "abortion" are used in their ordinary sense. State v. Stokes, 54 Vt. 178; Bassett v. State, 41 Ind. 303; Willey v. State, 46 Ind. 363; Cochran v. People, 175 Ill. 28. Furthermore the instrument should have been described or allegation made that it was unknown to the grand jury. Commonwealth v. Snow, 116 Mass. 47; Commonwealth v. Noble, 165 Mass. 13. (3) This verdict was not responsive to the information and was insufficient and the motion in arrest should have been sustained. State v. Modlin, 197 Mo. 376; State v. DeWitt, 186 Mo. 61; State v. McGee, 181 Mo. 312; Buster v. State, 42 Tex. 315; Johnson v. State, 30 Tex. App. 419; State v. Cronin, 189 Mo. 670; State v. Miller, 189 Mo. 673. (4) "The charge of a greater offense warrants a conviction of a lesser one embraced in it. But the verdict in such case is a special one, and must find all the facts that constitute the lesser offense." State v. Fritz, 133 N. C. 725. (5) "The charge was manslaughter and the evidence tended only to prove manslaughter or innocence. No instruction should have been given for any other offense because there is no evidence here to sustain any other theory." State v. Ryan, 15 Ore. 572; Ex parte v. Dela., 25 Nev. 346.

*Elliott W. Major,* Attorney-General, and *John M. Dawson,* Assistant Attorney-General, for the State.

(1) The amended information is valid and sufficient, closely follows the language of the statute, and contains all the necessary averments to constitute the offense. R. S. 1909, sec. 4458; State v. Gow, 235 Mo. 322. (2) Appellant filed his motion to quash and, during the pendency of said motion, the court permitted the prosecuting attorney to write in the information the word "felonious" before the word "in-

tent," so as to make it read "felonious intent." This is permissible under our Statute of Jeofails. R. S. 1909, sec. 5061; State v. Emerson, 188 Mo. 412; State v. Darling, 216 Mo. 450; State v. Rollins, 186 Mo. 501; State v. Speyer, 194 Mo. 459. (3) Instructions 1 and 2 follow the language of the statute, define the offense as prescribed by the statute, and tell the jury that if appellant committed the act, they will find him guilty and assess his punishment as per the statute. R. S. 1909, sec. 4458. (4) Several physicians, which is quite natural, testified in behalf of appellant, stating this kind of an operation would not kill a patient so soon, it would take longer, but these were expert witnesses and simply gave their opinions, and whose evidence is of the lowest type, and consists of matters of opinion and the deductions and reasoning of witnesses with all the chances of error incident to human reasoning. Jones on Evidence (2 Ed.), secs. 300, 391; Hull v. Trustee, 138 Mo 627; Treat v. Bates, 27 Mich. 290; Lawson on Expert and Opinion Ev. (2 Ed.), pp. 283, 286. The whole evidence shows the guilt of appellant beyond all doubt.

BROWN, P. J.—On January 18, 1911, defendant was convicted in the criminal court of Jackson county, of the alleged "felony of abortion," as denounced by section 4458, Revised Statutes 1909, and appeals from a judgment of that court fixing his punishment at confinement in jail for one year and a fine of $250.

The following is a summary of the evidence:

On September 12, 1910, the defendant was a practicing physician with an office in Kansas City, Missouri. On that date one William A. Hawkins, desiring a criminal operation performed upon his wife, Marion Hawkins, for the purpose of destroying pregnancy, called on defendant and requested the latter to perform the operation, stating that his said wife had

been pregnant for more than a month, and was not willing to bear a child. Defendant first declined to perform the operation, but on being told that Mrs. Hawkins was determined not to give birth to a child and would probably commit suicide if she could not be relieved of pregnancy, consented to perform the operation for the sum of ten dollars.

On September 13, 1910, Hawkins brought his wife to defendant's office, and about five o'clock in the afternoon of that day, defendant attempted to produce a miscarriage or abortion on her, by inserting several instruments into her private parts and womb; and also placed a considerable quantity of "tape" or gauze in her womb. This operation did not really produce a miscarriage or abortion, nor did it produce any immediate results. About twenty-four hours later, Mrs. Hawkins became violently sick, and some ten hours later died.

A post mortem examination held the same day of her death did not indicate the presence of any disease or wound except that her womb and ovaries were black and swollen with clots of decomposed blood inside the womb, which in the opinion of the coroner were produced by some outside interference which had destroyed a living foetus or child three or four weeks old.

The coroner gave it as his opinion that Mrs. Hawkins died from a septic infection brought about by an operation to produce miscarriage, and that said operation might produce death within thirty to forty hours.

The evidence of the coroner was challenged on this point by the evidence of physicians summoned by defendant, who testified that such an operation as Mrs. Hawkins had undergone at the hands of defendant would not produce death so soon as thirty hours; that death when produced by an attempted miscarriage or abortion, would usually not occur sooner than six days, and often not that soon.

Defendant in his own behalf testified that he agreed to treat the wife of Hawkins for ten dollars, but did not agree to produce a miscarriage or abortion; that upon being informed that Mrs. Hawkins was determined to get rid of her pregnancy, he surmised that something was wrong with her; that upon examination, he found her womb in an unhealthy and "doughey" condition, the neck being dilated and a foul smelling froth running out, which he thought indicated the existence of a dead foetus inside. Defendant further testified that to relieve Mrs. Hawkins, he inserted into her womb some medicated gauze, first thoroughly cleaning his tools to prevent infection; that his treatment was necessary to relieve the womb of Mrs. Hawkins of the dead matter therein and preserve her life.

The testimony of defendant was weakened by the evidence of the husband of Mrs. Hawkins, who stated that he did not employ defendant for any purpose except to produce a miscarriage or abortion, and that at the time of the operation defendant stated that Mrs. Hawkins was a healthy woman and ought not to experience any difficulty in getting well.

The State introduced evidence tending to prove that defendant's reputation for morality was bad.

The defendant seeks a reversal of the judgment of the trial court on the following grounds:

1. Error in overruling defendant's motion to quash the information.

2. Error in refusing to sustain defendant's demurrer to the evidence.

3. Error in giving instruction numbered 2, which authorized the jury to convict the defendant of "the felony of abortion."

4. Error in failing to arraign the defendant after the information had been amended.

5. That the verdict should have been special instead of general.

Such additional parts of the evidence and pleadings as are necessary to a more complete understanding of the case will be recited in our opinion.

The information in the case charges the crime of manslaughter in the second degree, as defined in section 4458, Revised Statutes 1909, and omitting the caption, signature and affidavit, is as follows:

"Now comes Virgil Conkling, prosecuting attorney for the State of Missouri, in and for the body of this county of Jackson, and files this his amended information, and upon his oath, informs the court, that Emil Dargatz, whose Christian name in full is unknown to said prosecuting attorney, late of the county aforesaid, on the —— day of September, 1910, at the county of Jackson, State of Missouri, with force and arms in and upon one Marion Hawkins, a pregnant woman, then and there wilfully, unlawfully and feloniously did make an assault, and did then and there wilfully, unlawfully and feloniously use and employ in and upon the body and womb of the said Marion Hawkins a certain instrument or instruments (the exact nature and description of which the prosecuting attorney is unable to give) and did then and there wilfully and feloniously thrust and force said instrument and instruments into the private parts and womb of the said Marion Hawkins, with the felonious intent then and there to promote and produce a miscarriage and abortion upon and to the person of the said Marion Hawkins; he, the said Emil Dargatz, being then and there a licensed physician and then and there not intending necessary medical or surgical treatment, and not being then and there engaged in any act necessary to preserve the life of said Marion Hawkins, or that of an unborn child, and not then and there intending any injury other than the destruction of pregnancy, did by the means aforesaid and in the manner aforesaid mortally wound, infect and disease the body and

womb of the said Marion Hawkins, in consequence of
which she was made and became mortally sick and of
which mortal sickness on the 15th day of September,
1910, at the county of Jackson and State of Missouri,
she, the said Marion Hawkins, did die; and so the
prosecuting attorney aforesaid, upon his oath afore-
said, doth say that the said Emil Dargatz her, the
said Marion Hawkins, at the county and State afore-
said, in the manner and by the means aforesaid, un-
lawfully, wilfully and feloniously did kill and mur-
der, against the peace and dignity of the State.''

I. The information is attacked on the ground
that it does not specifically allege that the criminal
acts of the defendant were not necessary to preserve
the life of Mrs. Hawkins or that of an unborn child.
We find the information charges that in attempting
to produce the miscarriage or abortion, defendant
was not ''engaged in any act necessary to preserve
the life of Marion Hawkins or that of an unborn
child.'' This was equivalent to stating that the un-
lawful acts of defendant in attempting to produce a
miscarriage or abortion were not necessary to pre-
serve the life of Mrs. Hawkins. It is not necessary
that an information should follow the precise lan-
guage of the statute. The information is sufficient.
[State v. Clawson, 30 Mo. App. 139: State v. Har-
roun, 199 Mo. 519.]

II. The court did not err in refusing to sustain
defendant's demurrer to the evidence. Hawkins, the
husband of the woman upon whom defendant per-
formed the criminal operation, testified that he em-
ployed defendant for the sole purpose of destroying
pregnancy. He also testified that at the time the op-
eration was performed, defendant stated that his wife

was in a healthy condition and ought to soon recover. This, with the evidence of the coroner and other testimony that Mrs. Hawkins became violently sick about twenty-four hours after the operation, and died on the second night thereafter, makes out a prima facie case of manslaughter, as charged. The evidence of defendant that his treatment or acts were necessary to preserve the life of Mrs. Hawkins, and other evidence on the part of defendant that she would not have died in so short a time as thirty or forty hours after the operation was performed, were questions of fact for the jury; and therefore, the case was properly submitted to them.

III. We find, however, that the court committed error in giving instruction number 2, which authorized the jury to convict the defendant of the felony of abortion.

The charge in this case is that the defendant produced the death of Marion Hawkins by his unlawful acts in inserting instruments into her womb. Therefore, under the charge and evidence it was improper to invite the jury to find him guilty of any other crime than manslaughter.

After a careful consideration of section 4458, Revised Statutes 1909, we are of opinion that the crime of the felony of abortion is not included within the charge of manslaughter in the second degree, as defined by that section. That statute expressly recites that where the death of the female does not result from the unlawful acts of defendant, he may be convicted of the felony of abortion. In this case, the charge is that Mrs. Hawkins died as the result of defendant's criminal operation, and he should therefore have been convicted of the crime of manslaughter in the second degree or acquitted.

The indictment charges manslaughter in the second degree; and therefore is inconsistent with and

negatives the theory that only the crime of abortion was committed.

The acts of attempting to commit manslaughter in the second degree, as prohibited by section 4458, supra, were by the General Assembly erected into a separate offense, designated as the "felony of abortion;" consequently that statute (Sec. 4895, R. S. 1909) which provides that persons charged with crime may be convicted of attempting to commit the crime charged, does not apply. The two offenses denounced by said section 4458 are so inconsistent with each other that they cannot both be charged in the same indictment. [State v. Weyland, 126 Mo. App. 723.]

IV. Appellant contends that the trial court committed error in failing to re-arraign defendant after the prosecuting attorney had amended his information by inserting the word *"felonious"* immediately before the word "intent" where said last named word occurs in the information.

It is true that there was no re-arraignment after the amendment above noted; but we do not think this constituted error, for the reason that the amendment was not material and not necessary to make a valid charge against the defendant.

The information as it stood before this amendment charged that the defendant *wilfully,* unlawfully and feloniously inserted instruments into the womb of Marion Hawkins, with the *intent* then and there to produce a miscarriage and abortion. The charge that defendant's acts were wilfully, unlawfully and feloniously done rendered unnecessary the charge that he possessed a felonious intent to perform a miscarriage and abortion; therefore the word "felonious," as inserted in the information, was not a material amendment thereof, and added nothing to its legal effect. Consequently there was no error in neglecting to re-arraign the defendant after the amendment was made. [Sec. 5061, R. S. 1909.]

V. Defendant's contention that the verdict should have been special instead of general will be disregarded in the view we take of the case; because no other crime is necessarily included in the charge that manslaughter was committed by the unlawful acts of defendant in attempting to produce an abortion and miscarriage.

Complaint is further made that the evidence shows that the prosecutor knew the, kind of instruments used by defendant upon Mrs. Hawkins at the time he filed the amended information and therefore should have described them with more particularity. This contention is wholly unsupported by the evidence.

The judgment will be reversed and the cause remanded for a new trial.

*Ferriss* and *Kennish, J. J.,* concur.