**STATE of Missouri, Respondent,**

v.

**George BURTON, Appellant.**

No. 48998.

Supreme Court of Missouri,

Division No. 2.

June 11, 1962.

Robert P. Stanislaw, St. Louis, Missouri, for appellant.

Thomas F. Eagleton, Atty. Gen., William L. Hungate, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

STOCKARD, Commissioner.

George Burton and Willie Cox were found guilty by a jury of attempted burglary in the second degree. Both were charged and tried under the habitual criminal act. The trial court assessed Burton's punishment at imprisonment for a term of five years, and he alone has appealed. He contends that the evidence was insufficient to authorize a finding by the jury that he was guilty of the offense charged, and that the trial court erred in refusing to grant his motion for judgment of acquittal. A detailed statement of the evidence is required.

John Baliva operated a grocery store and meat market, referred to as Johnny's Market, at 1501 Franklin Street (the corner of Franklin and Fifteenth Streets) in the City of St. Louis. On Friday evening, March 24, 1961, about 8:30 o'clock, Willie Cox entered the store and purchased some food. Mr. Baliva then offered to let him have an apartment over the store rent free if Willie would help him clean the store the following Sunday. Willie replied, "It's a deal," and they shook hands. Willie then told Mr. Baliva that "he heard Thursday night * * two fellows were going to bump [Mr. Baliva] off," which, according to Mr. Baliva, meant that the store was to be broken into or burglarized. At 10:30 o'clock that night Mr. Baliva closed his store and locked the front door with two padlocks. At 10:50 o'clock or about twenty minutes later, pursuant to a radio call, police officers Walter Allen and Earl Doyle drove in a police "cruiser" to 1501 Franklin. As they approached they saw appellant, Willie Cox and William Smith standing in front of Johnny's Market about five to seven feet east of the front door. The men remained there "milling around" until the police officers arrived. At the same time police officer Richard Limpert was approaching on foot, and he saw one of the three men, later identified as William Smith, throw a hunting knife into the street which the police officer recovered. Officer Allen examined the front door of Johnny's Market and found "marks on the door like slug marks * * * and one lock was off the hasp." The hasp was "pulled loose" and "just hanging there." The other lock was still on the door but it "looked like someone had been tampering around with it, it had marks dug into the wood around it;" the "wood around the hasp was chewed out." According to one police officer the door had been "jimmied." The missing lock was found nearby in Fifteenth Street. The police officers placed appellant and his two companions under arrest.

Appellant's pink and white two-door Ford automobile was parked in front of Johnny's Market. In the back seat of the automobile on the floor the officers found a hammer, a tire tool and a lug wrench which were designed to be used for removing hub caps, tightening lugs and removing tires.

Officer Limpert obtained some "paint samples" in the form of paint "scrapings" or "shavings" consisting of both wood and paint from the floor directly below the door of Johnny's Market. He also obtained a sliver of painted wood from the door. A "finger print expert" for the police department examined the front door of Johnny's Market with "dusting powder" but found no prints of any value. He did not attempt to "lift" finger prints from the tire tools or from the padlock which was found in the street.

After appellant and his companions were taken to the police station their trousers were examined by police officer Frank Grosse, a qualified chemist. He "processed" appellant's clothing for "superficial debris," removed all "foreign matter," and divided it into three groups: glass, paint chips, and all debris except paint chips and glass. Two paint chips were found on appellant's trousers. Each was smaller than a pinhead and with the naked eye one could not tell what they were. On the trousers of Willie Cox he found two paint chips but no glass. Officer Grosse mounted a paint

chip found on appellant's trousers and a paint chip taken from the area of the front door of Johnny's Market on separate pinheads beneath the eye pieces of a twenty-power comparison microscope. A colored photograph of the two chips was then taken, and the picture was shown to the jury by use of a projector and screen. Officer Grosse testified that the sequence of the layers of paint on the chip taken from appellant's trousers was "maroon or red over green, over white, and I think green repeated," and that there was an "agreement in the coloring of the layers" of paint in the two chips. He expressed the opinion that the chips "very likely came from the same source" and that it was a "very remote possibility" that they came from different sources. The two chips of paint found on the trousers of Willie Cox had only two layers of paint, apparently because the chips were not deep enough, but in their limited showing they also corresponded with the paint chips from the door of Johnny's Market. Officer Grosse also examined the paint on the tire tools but he stated that while the paint smears on the tools "agreed as to color" and they "looked like the same" he "could not correlate that paint with paint taken from the scene," and the paint on the tools did not match the "debris or chippings from the scene." He also stated that it was "possible" that the paint on the tools came from an automobile. On the hunting knife there was "quite a concentration of green paint" which "matched" and "seemed to agree" with the green paint on the chips taken from the door of Johnny's Market.

Willie Cox did not testify, but appellant testified in his own behalf. He stated that he was employed by "Big Bill" Dukey who had a place of business on Franklin Avenue between Fifteenth and Sixteenth Streets, and that on the day he was arrested he had been wrecking a red ice cream truck, and in doing so he used a hammer, crowbar, torch, and the tire tools found in the back seat of his automobile. He testified that after completing that work he returned to his employer's place of business on Franklin Avenue about 8:00 o'clock in the evening. He went to Willie Cox's house at 1621 Franklin Avenue and then went to Johnny's Market to buy food. He saw Cox talk to John Baliva while there. After dinner he and Willie purchased some wine and were drinking it in front of a liquor store on Franklin Avenue between Fifteenth and Sixteenth Streets when William Smith joined them. Appellant then drove to Fifteenth and Franklin to meet his wife. He parked his automobile "around the corner" on Fifteenth Street and the three of them sat in the automobile drinking wine and listening to the radio. After they had drunk all of their wine, William Smith went to get another bottle. While he was gone appellant moved his automobile around on Franklin Street a "little north of the call box," which is the place the automobile was parked when the police arrived. Five or six minutes after he parked on Franklin Street, Willie's sister came up to the car and she and Willie stood on the corner and talked about ten minutes. Appellant then got out of the car and asked, "What is wrong with Smitty, he ain't come back with the wine?" Smith soon arrived with the wine and the three "started drinking." Appellant looked down the street and saw the "cruiser" coming and he took the last drink of wine and "sat the bottle down to the curb." The police officers testified that they saw no bottle there, but that they did detect the odor of alcohol on appellant and Willie Cox. Appellant denied that he pried the padlocks loose on the door of Johnny's Market, and he stated he did not know how the paint chips got on his trousers.

■■ Where the evidence of a defendant's participation in the offense charged is circumstantial, as it is in this case, "the facts and circumstances relied upon by the State to establish guilt must not only be consistent with each other, and with the hypothesis of defendant's guilt, but they must also be inconsistent and irreconcilable with his innocence, and must point so clearly and satisfactorily to guilt as to exclude

every reasonable hypothesis of innocence." State v. Brown, Mo., 291 S.W.2d 615, 619–620; State v. Whitaker, Mo., 275 S.W.2d 316, 320. In ruling the sufficiency of the evidence to support a verdict of guilty, however, even where the evidence is wholly circumstantial, all of the evidence tending to support the verdict must be considered as true, and every legitimate inference therefrom favorable to the verdict must be indulged. State v. Brown, supra at p. 620; State v. Murphy, 356 Mo. 110, 201 S.W.2d 280.

When we so consider the evidence we accept as true that Mr. Baliva left his store and locked it at 10:30 o'clock, and that approximately twenty minutes later the police arrived and found appellant and his companions there. We also accept as true that appellant had his automobile in front of Johnny's Market about fifteen or sixteen minues before the time that William Smith returned with the second bottle of wine, and that thereafter appellant and his companions drank the wine before the police arrived, which of course took at least several additional minutes. From the amount of work necessary to remove one lock from the door and to pry loose the other, it is a reasonable inference that it would have been impossible for someone else to have done all this after Mr. Baliva left the store and before appellant admits that he parked his automobile in front of the store. Yet, when appellant testified, he did not claim that any one else was at the front door of Johnny's Market while he was sitting in his automobile in front of it, and in view of the amount of light shown by the evidence and the nearness of the automobile to the door appellant could not possibly have failed to see a person attempting to open the door if in fact someone other than appellant and his companions was trying to do so.

Appellant admits in his brief that "without a doubt the chip [of paint] on his trousers came from the market door." He argues, however, that the principal question is how the chips of paint got on his trousers. He points out that Officer Limpert gathered up paint chips from in front of the door, that he then searched appellant and Willie Cox but not William Smith and rode to the police station with all the persons arrested and handled their trousers at the station. Officer Grosse testified that a paint chip as small as those found on appellant's trousers would "likely" stick to the skin of anyone touching it, and based on this appellant argues that it is as reasonable to assume that the paint chips got on appellant's trousers from Officer Limpert's hands as it is to assume they were deposited there while he was attempting to open the door to the market. If this one circumstance was the only one to be considered, it might be said that there is some merit to the contention. But in addition, there is the circumstance of appellant's presence, previously discussed, and the circumstance of the hunting knife which had paint on it which "matched" and "seemed to agree" with the paint on the door. In addition, William Smith was seen to have thrown the knife into the street as the police officers approached, indicating a desire not to be found in possession of it. We do not consider the tire tools and the paint on them to be of any significance either way. The State's expert witness could not tie the paint on these tools to the paint on the door, and there was no evidence that they were ever out of the automobile. In addition, the presence of the hunting knife and the paint on it indicates that it, and not the tools in the automobile, was the instrument being used in the attempt to remove the locks.

When all the circumstances are considered we find that the evidence discloses that appellant was present at the scene of the attempted burglary at the time the attempt to enter the store necessarily was being made, but when appellant testified he did not claim he saw any one else making such an attempt. Paint chips were found on appellant's trousers which admittedly came from the door of Johnny's Market and those attempting the burglary

chipped paint from around the locks on the door. When the police approached, one of appellant's companions threw a hunting knife, a suitable instrument for loosening or removing the hasps for the locks, into the street, and that knife had paint smears on it matching some of the paint on the door. These circumstances are all consistent with each other and are consistent with the hypothesis of appellant's guilt of the offense for which he was charged. They are inconsistent with his innocence, and while these circumstances are not of themselves conclusive, and they need not demonstrate an absolute impossibility of innocence, 23 C.J.S. Criminal Law § 907, p. 578, when considered together they point so clearly and satisfactorily to his guilt so as to exclude every reasonable hypothesis of innocence. We therefore conclude that the facts and circumstances shown by the evidence are sufficient, as a matter of law, if believed by the jury to induce a belief of appellant's guilt beyond a reasonable doubt.

The above disposes of the only assignment of error briefed by appellant on this appeal. The record shows that appellant was duly arraigned and entered a plea of not guilty. The information is in proper form and is sufficient as to substance. It has not been challenged by appellant. The verdict is in proper form and the punishment was duly assessed by the trial judge (this being a charge under the habitual criminal act) and is within the limits provided by statute. Defendant and his counsel were present throughout all steps of the proceedings, allocution was granted, and the judgment is in due form.

The judgment is affirmed.

BOHLING, C., concurs.

BARRETT, C., dissents.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.