STATE of Missouri, Respondent,

v.

Lavon Walter HADLEY, Appellant.

No. 49407.

Supreme Court of Missouri,
Division No. 2.

Feb. 11, 1963.

Ellsworth W. Ginsberg, St. Louis, for appellant.

Thomas F. Eagleton, Atty. Gen., Leo. H. MacDonald, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

EAGER, Presiding Judge.

Defendant was charged by information with attempted burglary in the second degree and with two prior convictions. Upon trial, the jury found him guilty and the court, finding that he had been convicted of and sentenced for two prior offenses, sentenced him to a term of five years. That sentence was one-half of the maximum punishment provided for second degree burglary (§ 560.070) [1] and also the maximum provided for the attempted burglary (§ 556.150). No brief has been filed for the defendant. We shall consider such assignments of the motion for new trial as comply with our Rule 27.20, and such matters as are required under Rule 28.02, V.A.M.R.

One assignment thus raised is that the evidence was insufficient and that a motion for acquittal should have been sustained. This necessitates a review of the evidence. On and prior to October 9, 1961, Louis Torin operated a "tailor shop" at 515 N. Sarah Street in St. Louis; actually his principal business was the sale of new and used clothing, consisting of suits, topcoats, jackets, sport coats, etc. He kept this clothing in his shop on hangers and racks, visible, at least in part, from the outside. At about 4:00 p. m. on October 9, 1961, he installed a heavy wire mesh or screen inside the glass of his front door, locked the door and went home. At that time he left a two-bulb fluorescent light burning near the front of the store. The wires of this screen were about as large as an ordinary pencil; Torin, as was customary, hung the screen on hooks or hangers located near the top of the door, fixed it in place, and locked it at the bottom. The glass in this door was approximately 62 inches by 36 inches. Sarah Street runs north and south; the store faced west. Immediately north of the store was an alley;

the store's front door was apparently placed at an angle, facing northwest at the alley corner, with an entryway in front of it. There were two street lights nearby, one a little north on the same side of Sarah, and one across the street; half a block south was Olive Street, and half a block north was Washington. A couple by the name of Hopkins lived above the tailor shop; Mr. Hopkins was then operating a small confectionery next door. Their mode of entry and exit was a stairway leading up at the side of the tailor shop.

At a time somewhere around 11:00 p. m. on October 9, 1961, Mr. and Mrs. Hopkins had retired; they then heard a rather loud sound of breaking glass beneath them; it was not cold and their windows were open. They looked out into Sarah Street and saw two men walk across it and sit down in a doorway. One of these men was (from this and subsequent observations) definitely identified by both as this defendant; he was wearing a brown checked topcoat. At about the time these men sat down the other man said to defendant, in substance, "What did you hit that glass with, your fist?" To this defendant replied, "No, a brick." There were no other people on the street, and apparently no traffic. Mr. and Mrs. Hopkins dressed and, together or singly, went downstairs as the men got up and walked toward Olive Street. They saw a hole in the glass of the tailor shop door, five or six inches in diameter, with the remainder of the glass more or less shattered. Mr. Hopkins started toward Olive Street to find a policeman; Mrs. Hopkins went back upstairs temporarily. As Mr. Hopkins proceeded toward Olive Street, these same two men passed him, coming back north on the opposite side of the street, having turned around at or near the corner. Hopkins then saw the men cross Sarah Street and go back to the front of the tailor shop; he found a policeman, Dan Wilfley, at a drug store at the Olive Street corner, and reported the breakin attempt. Hopkins and the officer immediately proceeded to the shop. In

---

1. All references are to RSMo 1959 and V.A.M.S., unless otherwise stated.

the meantime Mrs. Hopkins, looking from her upstairs window, had watched both men take the remaining glass out of the door, carry it across the alley, and lay it on a church lawn or yard. When Mr. Hopkins and Wilfley arrived (the latter with his service revolver in his hand) all the glass was gone, this defendant was pushing inward on the mesh screen of the door, and the screen was "giving" or sagging; his confederate was standing to his left and somewhat behind him. As soon as defendant saw the officer he took his hand or hands away from the door; Wilfley placed the men under arrest. Defendant had a slight cut on one finger of his right hand, and a little blood was found on one or more of the pieces of glass lying in the church yard. Wilfley saw no other people on the street; he took from the church yard a piece of glass which seemed to have blood on it and turned it in to the police laboratory; he also picked up a brick lying in the alley near the door, initialled it, and turned it in to the laboratory. Both glass and brick were later admitted as exhibits; we note here, somewhat out of order, that upon examination in the police laboratory, it was found that the glass bore the prints of the right thumb and right middle finger of this defendant. Wilfley testified: that defendant walked normally and enunciated satisfactorily; that he thought defendant had been drinking but was not drunk; that his eyes looked "glassy," but that he did not stagger or tremble. Since defendant had a small cut on one finger, he was taken first to the Emergency Room at City Hospital No. 1. After the officer took the men away, Mr. Hopkins boarded up the door for Mr. Torin, who had then arrived. Torin testified that the mesh screen had been pushed in until one "could almost get through it."

The defendant did not testify; his counsel produced some evidence, presumably for its possible effect on the jury; it was and is of no materiality on the issues here. Briefly, it consisted of the Emergency Room record with the following notations: "cut ring finger while breaking into house; also com-

plaining he is about to go into dts. * * * patient is extremely nervous, small one-half centimeter superficial laceration right ring finger. * * * closed (or cleansed) laceration * * * diagnosis—impending dts? superficial laceration." A surgical interne testified that a tranquilizer was administered, that delerium tremens usually occurs when one is withdrawn from alcohol and is accompanied by "shakes" and hallucinations, and that "impending dts" is a rather inexact diagnosis, even without the question mark added.

As already indicated, the court, apart from the jury (§ 556.280) heard the evidence of defendant's prior convictions and made findings that he had previously been convicted of the offense of carrying a concealed weapon and that he was duly sentenced therefor; also, that he had been convicted of the offense of "operating and running a motor vehicle without the consent of the owner" and sentenced therefor; both convictions occurred in the City of St. Louis, and both were entered upon pleas of guilty. Both offenses are made subject to punishment in the penitentiary. Sections 564.610 and 560.175.

■ We now take up in order the assignments of the motion for new trial. The first is directed solely to the weight of the evidence; the second is that the verdict "was against the evidence and the weight of the evidence." These assignments have been held insufficient to raise any issue on appeal. State v. Ivory, Mo., 327 S.W.2d 870, and cases cited.

■■ The third assignment asserts that the evidence was insufficient to make out a case of attempted burglary, second degree, and that defendant's motion for acquittal should have been sustained. The only such motion preserved here is the one at the close of all the evidence. The recital of facts which we have made shows very clearly that the evidence established every necessary element of the crime of attempted burglary. In State v. Kiddoo, Mo., 354 S.

W.2d 883, 884, the court said, in considering and quoting from an information, "There is in effect or directly an allegation of an attempt, the overt acts constituting the attempt, the intent and a failure, prevention or interception in perpetration, and, after verdict and in the absence of an appropriate specific attack, the information appropriately charges the substantive offense of an attempt to commit burglary in the second .degree." And see also State v. Bliss, Mo., 80 S.W.2d 162, 163. The defendant here was positively identified by three persons and, according to the evidence, he was apprehended in the very act of attempting a breakin. Further, the evidence showed that defendant's attempt involved a store where "goods, wares, merchandise" were kept; there is a logical and almost necessary inference of an intent to steal goods from the store. To hold otherwise would border upon the absurd. In State v. Burton, Mo., 357 S.W.2d 927, circumstantial evidence of less weight than the evidence here, was held sufficient to establish this crime. An *entry* is necessary in the consummated crime of burglary, but *not* in that of attempted burglary; the reason is simple,—if an entry were made, the crime would be *burglary*. Here, within the very words of the "attempt" statute, § 556.150, defendant had committed an "act toward the commission of [the] offense" and had been "prevented or intercepted in executing the same * * *." It would be a waste of time to pursue this point further.

▪ The next assignment is that the court failed "to instruct on all the law of the case," and particularly on the lesser charge of "breaking and entering a building, a misdemeanor * * *." The first part of this assignment is too general to be of any substance. The second part is vague, at best, but we shall discuss is briefly. We know of no criminal statute defining and punishing the "breaking and entering of a building * * *," except the burglary statutes. It is possible that counsel had in mind § 560.395, which makes it a misdemeanor to "willfully and maliciously break,

destroy, or injure the door or window of any dwelling house, shop, store * * * or sever * * * any part thereof * * *." That section has, in substance, been a part of our statutes since the Revised Statutes of 1835; it has been referred to as an act relating to "malicious mischief." Vaughn v. May, 217 Mo.App. 613, 274 S.W. 969; Vaughn v. May, Mo.App., 9 S.W.2d 156. That offense imports no intent except to injure or destroy, whereas burglary necessarily requires an intent, after entry, "to steal or commit any crime therein" Section 560.070. It would seem that defendant's counsel was attempting to claim some benefit from § 556.220, which provides that the jury may find an accused guilty of "any degree of such offense inferior to that charged * * * or of an attempt to commit such offense, or any degree thereof." The malicious destruction of or injuring of property is *not* a lesser degree of burglary, whether of the first or second degree. In State v. Drake, Mo., 298 S.W.2d 374, at loc. cit. 377–378, the court said: "Defendant's further claim of error because the court did not give an instruction on malicious destruction of property, apparently meaning the offense set out in Sec. 560.395, is likewise without merit. This is not a lesser degree of the offense of burglary under Sec. 560.070 with which defendant was charged so as to come within the provisions of Secs. 556.220 and 556.230 authorizing conviction of any degree of an offense inferior to that charged or of any offense which is necessarily included in that charged against him. See State v. Davidson, 73 Mo. 428; State v. Dargatz, 244 Mo. 218, 148 S.W. 889; State v. Willner, Mo.Sup., 199 S.W. 126; State v. Hancock, 320 Mo. 327, 7 S.W.2d 273; State v. Villinger, Mo. Sup., 237 S.W.2d 132; State v. Pullan [Pullam], Mo.App., 293 S.W. 484." And if, perchance, defendant had in mind also § 556.-230 to the effect that a defendant may be found guilty of any offense which is necessarily included in the one charged (i. e., § 560.395) the Drake case, supra, constitutes a complete answer to that contention. Here the evidence, considered as a whole, very

clearly pointed to an attempted burglary,— not to a mere malicious destruction of property; thus, these men took all the glass out of the door, and defendant was pushing upon the screen in an obvious effort to force it loose so that an entry might be made. Where the evidence does not fairly warrant an instruction on some lesser offense, it need not be given, even if offered. State v. Johnson, 326 Mo. 1030, 33 S.W.2d 912, see also State v. Richardson, Mo., 343 S.W.2d 51, 55. Nor do we believe that a trial court should be required to search the criminal statutes to find some offense which might possibly be included within the offense charged, in order to give an instruction upon it of his own motion. Defendant here declined to offer any instructions. This contention is denied.

Assignment No. 5 complained of Instruction No. 2, on the ground that there was no substantial evidence to justify it. The reference to No. 2 may be unintentional, as indicated in the next point. In any event, Instruction No. 2, in an oft-approved form dealt with the presumption of innocence, defined the burden of proof, and stated the rules of law on credibility. We find no error whatever in the instruction.

The last two assignments complain of a quoted portion of "instruction No. 2"; the references are obviously to Instruction No. 1, and we shall consider them as such. That was the principal instruction describing the charge, hypothesizing the facts necessary to a conviction, and instructing the jury to acquit the defendant if it did not find such facts beyond a reasonable doubt. After setting out four definitions, the instruction concluded with the following paragraph: "You are further instructed that the only issue submitted to you and which you will determine by your verdict is whether the defendant is guilty or not guilty of the charge of attempted burglary in the second degree as set forth in the above instruction which is numbered one, and you will not assess any punishment if you find the defendant guilty as charged and as required by this instruction, numbered one." The complaints are: that the quoted part of the instruction is ambiguous and misleading in that it tells the jury "that it can assess punishment under certain circumstances, but not these"; that it places undue emphasis on the words "guilty as charged"; and that the words "you will not assess any punishment" were not fully justified by the substantial evidence.

Section 556.280 provides that in cases such as this, where a defendant has previously been convicted, sentenced, and fined or imprisoned, the trial judge shall determine the punishment. The court cannot, with any reason or logic, instruct the jury in such a case without reserving to itself the right to fix the punishment. That is all the court did here and its action was entirely proper; there was no reference to "certain circumstances" or other circumstances, so far as we can see. In fact, the whole paragraph merely told the jury, and properly so, that the only issue for it to determine was whether defendant was guilty or not guilty of the crime of attempted burglary as charged, and that it should not assess any punishment if it did find defendant guilty. It could not have done otherwise; there was no undue emphasis, the "substantial evidence" fully justified this and the other instructions, and the objections, individually and collectively, are without merit.

The amended information was sufficient (State v. Bliss, Mo., 80 S.W.2d 162), the verdict is in proper form, and we find no error in any other matters which we are required to examine under our Rule 28.02.

The judgment is affirmed.

All of the Judges concur.