**STATE of Missouri, Respondent,**

v.

**William Monroe McBRIDE, Appellant.**

No. 53936.

Supreme Court of Missouri,
Division No. 2.

March 10, 1969.

John C. Danforth, Atty. Gen., Jefferson City, Gene E. Voigts, Sp. Asst. Atty. Gen., North Kansas City, for respondent.

Elliott P. Koenig, St. Louis, for appellant.

MORGAN, Judge.

Defendant, as a second offender, was tried to a jury and found guilty of attempted burglary of a dwelling house in the City of St. Louis. Sections 556.150, 560.045 and 560.095, RSMo 1959, V.A.M.S. The court assessed punishment at three years confinement.

As appellant, defendant now asserts: (1) the "order" in which the state's evidence was presented resulted in prejudice to him, and (2) the evidence was insufficient to prove the crime of attempted burglary. In view of the first assignment, we will outline the evidence in the exact order it was presented to the jury.

Mr. Andrew Gunn testified that he was the owner of a residence property at 5558 Greer Avenue in the City of St. Louis. That he left for work at 6:30 in the morning on December 5, 1967, and returned home at approximately 3:00 in the afternoon. When asked if on his return he noticed anything unusual, he replied, "* * * no more than the door looked like it was a little—had been loosened a little bit." A later answer was, "The door looked like it had been kind of prised [sic] a little * *" Further answers to similar questions during cross-examination were related to a picture exhibit of the front door, and it is

nearly impossible to equate any answer to any specific crack, chip or indentation shown by the exhibit, e.g., "There's a crack right up here, looks like it's prised [sic] a little more than, you know, it's supposed to be, right in there, but not the little edges there." Argument is made that Mr. Gunn was referring to an indentation that could not have been made without a metal tool. (Later evidence reflects no such tool was found.)

Mrs. Gunn's employment had required her absence from the home on this same day. She referred to the door as being "a little shabbier than it was," and later, "* * it was a little shabby but it wasn't as loose." Further answers are lost somewhere in the picture exhibit.

At this point, it should be noted that defendant's first assignment centers around his continuous objection that all of this testimony was prejudicial absent some prior showing defendant had caused the damage to the door.

At 1:40 P.M. on this day two officers of the St. Louis City Police Department were traveling in an unmarked police car in the 5500 block of Greer Avenue. Officer Reynolds testified, "* * * we saw these fellows standing up on the steps of 5558 Greer and one was on the porch, one was behind the screen and pushing on the door, and there was one standing on the front watching, looking up the street." When the one on the porch saw the officers, "* * * they both came off the steps." He described the actions of the one at the door, now identified as defendant, by saying, "Seemed to be pushing this door like this, (indicating), with his shoulder." This movement was observed two or three times. When the two came off the porch, "One started to walk one way and the other started to walk the other way." Arrests were then made and no metal tools or objects were found. On cross-examination one answer was, "Yes, he was pushing against the door with his shoulder." He identified what he called a splinter crack in the door, and recalled chips where it ap-

peared paint had recently been removed, but, again, .we cannot relate the answers accurately to the exhibit. Officer Hotsenpillar's testimony was too similar to require repeating.

Defendant testified he and a friend, presumably the juvenile apprehended with him, were walking along the sidewalk on Greer when arrested. To the question, "Were you ever on anybody's porch on Greer Avenue?" he replied, "No, sir."

■■■ Looking now to defendant's argument that the order of proof was prejudicial, we find it wholly without merit. It has long been established that "order of proof" rests in the judicial discretion of the trial court, and "* * * if from the whole record it appears that the evidence is competent and relevant and otherwise admissible, the order in which it is offered and admitted is generally immaterial." 23 C.J.S. Criminal Law § 1045, p. 1192. We have so held. State v. Brooks, Mo., 159 S.W.2d 646[3]; State v. Holliday, 353 Mo. 397, 182 S.W.2d 553[2]; Mo.Dig., Criminal Law, ⊜680(1). Further, as in other matters of discretion, the actions of the trial court are subject to review, and, if actually shown to have misled the accused or in some manner have confused the jury, may be found to have been an abuse of such discretion. No such prejudicial result is shown here. In passing, we must comment that the presentation of the state's case followed the approach normally used, which is, prove the corpus delicti and then implicate the accused.

■■■ By his second assignment, defendant contends his motion for acquittal should have been sustained, and that we should conclude as a matter of law that the evidence was insufficient to sustain the judgment of conviction. In resolving this issue, after the jury has exercised its prerogative of judging the credibility of witnesses and evaluating the probative value of their testimony, we accept as true that evidence tending to support the verdict. State v. Slade, Mo., 338 S.W.2d 802[3]; State v. Burton, Mo., 357 S.W.2d 927[2].

**224**

The owners and occupants of this residence property both testified that during their absence "some" damage was done to their front door. Two officers observed what appeared to be recent damage. For the record, it is unfortunate that questions and answers were not more precisely identified with the exhibit, but this effort was made within the view of the jury where answers perhaps could be more accurately related to the exhibit. However, we disregard this assumption and accept the testimony as being conflicting, but with no evidence to the contrary we cannot say the jury improperly found that there had been an attempt to enter this dwelling. The officers positively identified defendant as the person who made such attempt by shoving the door with his shoulder. That he might have been able to have shoved harder is unimportant, for "no particular amount of force need be used in that attempt." State v. Davis, Mo., 367 S.W.2d 517[8]. Defendant's doubts the two officers could make such observations from a slow moving automobile were presented to the jury and resolved by its verdict. Further argument is made that only a suspicion of guilt was created, and defendant correctly insists that in Missouri a "mere suspicion of guilt, however strong, is not sufficient to authorize a criminal conviction." State v. Watson, Mo., 350 S.W.2d 763, 768. Further reliance is placed on comparable rulings made in State v. Walker, Mo., 365 S.W.2d 597, and State v. Irby, Mo., 423 S.W.2d 800. Mo.Dig., Criminal Law, ⚷ 552(3), but all are readily distinguishable. Generally, such cases involved an accused who was shown to have had nothing more than an opportunity to commit the particular crime. In this case defendant's actions, as observed by the officers, constituted the primary element of the crime charged—the attempt to enter the dwelling. We find the evidence sufficient to sustain the conviction for attempted burglary. State v. Davis, supra; State v. Burton, supra; State v. Hadley, Mo., 364 S.W.2d 514.

The judgment is affirmed.

All of the Judges concur.