STATE v. C. E. MURPHY, alias EDWARD BURNES, Appellant.—No. 39807 —201 S. W. (2d) 280

Court en Banc, April 21, 1947.

*Lewis F. Randolph* for appellant.

J. E. Taylor, Attorney General, and C. B. Burns, Jr., Assistant Attorney General, for respondent.

CONKLING, J.—C. E. Murphy (hereinafter called defendant) was convicted in Holt County of the larceny on July 27, 1945, of a stationary gasoline engine, valued at about fifty dollars, the property of one Uhel Banks. Upon the jury's verdict he was sentenced to five years imprisonment and appealed. In this court he makes the sole contention that the evidence was not sufficient to authorize the trial court to submit the case to the jury.

The evidence is wholly circumstantial as to defendant's connection with the theft. In view of the defendant's contention in this court, we state the evidence most favorably to the state. Banks lived on a farm about a mile and a half east of Forbes, Missouri, on a public gravel highway. Lloyd Kirk, who was Banks' employee, lived on another farm on the same highway about half a mile east of the Banks' house. The engine in question was kept by Banks in the yard of a vacant farm house north of and abutting the same highway and located about halfway between the Banks' home and the Kirk home. The engine, on a base 16 to 18 inches wide, was 16 to 17 inches high, about 30 inches long, weighed from 125 to 150 pounds, was "strapped" to a wooden chunk and was located about 125 feet north of the gravel highway. It was used each day to pump water for livestock. The engine was not visible from either house but was visible from the highway in front of the vacant house. Kirk, when passing the vacant house, saw the engine at its usual place about 6:30 or 7 A. M. on the morning it was stolen. About 1 P. M. the same day Kirk stopped in the highway near the vacant house to start pumping water for the stock and discovered the engine was missing.

Defendant, who lived in St. Joseph, Missouri, in his business of cleaning septic tanks and cesspools used a specially equipped truck, green in color, with pump jacks visible above the bed. The name "C. E. MURPHY" was painted on the bed in large letters. This truck was over the above mentioned gravel highway several times on the day of the theft. At 8:30 or 9 A. M. the truck passed west, it later went east and later, at or about one P. M., again went west. About one P. M. defendant's truck was stopped on the side of the highway, headed west, and a short distance east of a point on the highway which was directly south of the place where the engine was used in the yard of the vacant house. Two men were seen on the highway by the truck. Kirk saw the truck start up moving west and pass him as he went east on the highway toward his home on a tractor. About an hour later when on his way back to work after his noon meal Kirk found the engine was missing. There were footprints around the place where the truck had been stopped on the highway

and sewage was spilled on the ground there. Footprints around the place where the pump had been in the yard of the vacant house were of two sizes, but were not measured or compared with footprints in the highway, but *appeared* to be the same. The witness "couldn't say" that the footprints were the same, and did not undertake to say so. There was a bank at the side of the highway and it was uphill from the highway to the yard where the engine had been used to pump water. There was a path through the weeds up the bank near where the truck had been stopped and in that path the weeds and vegetation were freshly tramped down. Footprints were discernible therein, but those footprints were not measured or compared with those in the highway, nor with those around where the engine had been. About 1:15 P. M. the defendant's truck with his name painted in large letters on the side thereof was in Forbes, Missouri, only a mile and a half from Banks' farm. It was stopped at the Hicks Service Station where ten gallons of gasoline were purchased for the truck. The man who purchased the gasoline solicited the job of then and there cleaning the septic tank at the Hicks Filling Station.

Of all the witnesses who testified they saw defendant's truck on the day of the theft on the gravel highway or in Forbes, Missouri, shortly thereafter, no one testified that the engine, nor any similar appearing object, in sight or covered up, was in defendant's truck. The gasoline engine was not later found, nor was it accounted for at the trial. No one identified defendant as being in Holt County on the day in question, but a few days later in St. Joseph defendant admitted to the Sheriff of Holt County "I was up that road—I came through there looking for business."

 Inasmuch as the evidence of defendant's agency in the theft is entirely circumstantial the facts and circumstances relied upon by the state to establish guilt must not only be consistent with each other and with the hypothesis of defendant's guilt, but they must also be inconsistent and irreconcilable with his innocence, and must point so clearly and satisfactorily to guilt as to exclude every reasonable hypothesis of innocence. State v. Freyer, 330 Mo. 62, 48 S. W. (2d) 894; State v. Pritchett, 327 Mo. 1143, 39 S. W. (2d) 794; State v. Archer (Mo. Sup.), 6 S. W. (2d) 912.

In ruling the sufficiency of the evidence to support a verdict of guilty, even in cases where the evidence is wholly circumstantial, all the substantial testimony tending to support the verdict must be considered as true, and every legitimate inference therefrom favorable to the verdict must be indulged. State v. Allen, 342 Mo. 1043, 119 S. W. (2d) 304, State v. Smith, 329 Mo. 272, 44 S. W. (2d) 45. The law requires, however, that the facts and circumstances of record do more than raise a mere suspicion that defendant is guilty as charged for verdicts based on surmise, conjecture; suspicion or mere opportun-

ity to commit the crime cannot be permitted to stand. State v. Schrum, 347 Mo. 1060, 152 S. W. (2d) 17, State v. Pritchett, supra.

Tested within these legal boundaries, what of defendant's contention that the evidence is insufficient to sustain a conviction? If we assume (and we do so assume) to be true every bit of testimony and every legitimate inference that could possibly be considered in any wise to support the verdict of guilty, we think that the most that can be made of them all is that they show an opportunity to commit the larceny and possibly a suspicion of guilt. Accepting it as true that defendant was "up that road" on the day of the larceny, and that near one P. M. his truck was stopped on the side of the road near a place where later a freshly beaten path was found through the weeds up the bank, those facts do not point to defendant's guilt so strongly as to exclude every reasonable hypothesis of his innocence. Such facts are consistent with guilt, and show merely that defendant may have had an opportunity to commit the larceny, assuming the engine was there at the time and had not already been stolen. But those facts, while they may raise a suspicion, are insufficient to sustain conviction. Those facts are not at all inconsistent with the innocence of defendant and not inconsistent with the possibility that the engine may have been stolen by some one else. The engine was within 125 feet of a travelled public highway, and others could have had the same opportunity that defendant had. Can defendant's conviction be affirmed merely because he happened to stop his truck at that point and alight? We do not think so. There is neither testimony nor inference that defendant or either of the two men who were by the truck in the highway were over in the path which ran up to the bank, or that either were up in the yard near the engine, or that they were anywhere there except in the road by the truck. That there were tracks around where the engine had been kept and that such tracks "appeared" to be the same, or were similar to the shoe tracks in the road, while admissible, is wholly without value as evidence, or as inference. See State v. Freyer, 330 Mo. 62, 73, 48 S. W. (2d) 894. No measurements or comparisons of the shoe tracks were made by anyone. All men's shoes or shoe tracks are somewhat similar to a mere casual observer. That shoe tracks "appear" the same means nothing, and is too meaningless and lacking in probative value in the instant circumstances to deprive defendant of his liberty. In State v. Freyer, supra, in discussing the probative value of certain evidence respecting tracks claimed to have been made by the shoes of the appellant in that case, we said (330 Mo. l. c. 73) : "Furthermore, there was nothing to show the tracks seen in the lane had been made by the appellant except the testimony of one of the hound masters, that he observed the tracks and later looked at the appellant's feet while the two were standing talking to each other, and that to him the feet and tracks seemed similar in size, and the appellant's shoes appeared to have rubber

heels. This was valueless as evidence. If a man's feet were noticeably larger or smaller than tracks found, proof of the fact would doubtless be good as negative evidence that he did not make the tracks. Or if his shoes because of their unusual shape or for some like reason would obviously leave a peculiar imprint resembling certain tracks in size and otherwise; or if the tracks led from the scene of the crime to the accused and *could* have been made by him—perhaps that fact might be shown from mere observation. But to say that without comparing measurements of the tracks and the shoes, or fitting the two together, one may merely look at a man's feet as he stands in his shoes, and assert with any degree of accuracy he made ordinary rubber heeled footprints in isolated places on dry ground— that, we say, is going too far. Indeed, there is authority for saying the circumstance alone that a man's shoes fit certain tracks is no proof he made the tracks, where the shoes are of average size, such as are worn by a great many people of the community. (Heidelbaugh v. State, 79 Neb. 499, 113 N. W. 145.)'' Not only were there no measurements in the instant case of the tracks made by shoes, but here the testimony did not go so far, and was not as strong as in Freyer's case. No testimony of value, and no inference possible from the instant facts places defendant any nearer to where the engine was kept than 125 feet. Any wayfaring person who passed along or drove along the road was equally as close. Assume that defendant did stop and get out of his truck. Should defendant be convicted merely because he stopped and alighted within 125 feet of where property was kept, which property may have been theretofore or thereafter stolen by some one else? We think not. The bare fact, and no more, that defendant's truck was stopped there and that defendant was out on the gravel road is not substantial evidence of the guilt of defendant. The law presumes him to be innocent until his guilt is established by substantial evidence beyond a reasonable doubt. Upon this record there is reasonable doubt of defendant's guilt. The evidence of guilt is inconclusive and is not sufficient to sustain a conviction. This court has uniformly refused to affirm convictions where, as here, the facts and circumstances of record are not inconsistent with any reasonable theory of innocence, and in any event do no more than raise a suspicion of guilt, however strong such suspicion. See, State v. Carpenter, 348 Mo. 464, 154 S. W. (2d) 81, State v. Schrum, supra, State v. Wilson, 345 Mo. 862, 136 S. W. (2d) 993, State v. Akers (Mo. Sup.), 177 S. W. (2d) 505, State v. Shields, 332 Mo. 280, 58 S. W. (2d) 297, State v. Archer (Mo. Sup.), 6 S. W. (2d) 912.

There being no testimony in the record from which can be drawn a reasonable inference of the guilt of defendant and no substantial evidence upon which to submit the cause to the jury, the judgment

of the Circuit Court is reversed. Inasmuch as it does not appear that upon another trial a case can be made to submit to the jury the defendant is ordered discharged. It is so ordered. All concur.