**STATE of Missouri, Respondent,**

v.

**Roy WALKER, Appellant.**

**No. 49375.**

Supreme Court of Missouri,

Division No. 2.

March 11, 1963.

William A. Moon, Springfield, for appellant.

Thomas F. Eagleton, Atty. Gen., James W. Steele, Sp. Asst. Atty. Gen., Jefferson. City, for respondent.

STORCKMAN, Judge.

The defendant was found guilty of stealing a chain saw of the value of at least $50. Section 560.161, RSMo 1959, V.A.M.S. He was sentenced to imprisonment for a term of two years in accordance with the verdict of the jury. He has appealed but has filed no brief, so the case is before us on the transcript of the record and the brief of the state.

In this situation we review the assignments of error properly preserved in the motion for new trial and the essential parts of the record. Supreme Court Rules 27.20 and 28.02, V.A.M.R.; State v. Weindorf, Mo., 361 S.W.2d 806, 808 [1]. The assignments of error are that the evidence

is insufficient to sustain the judgment of conviction and that the court erred in failing to instruct on all of the law of the case in that the evidence at best tended only to establish an attempt by "somebody" to steal the saw.

■ In determining the sufficiency of the evidence to sustain the conviction, we consider as true the evidence favorable to the state and the favorable inferences reasonably to be drawn therefrom, and evidence to the contrary is rejected. State v. Reagan, Mo., 328 S.W.2d 26, 29 [5].

■■ There is no merit to the defendant's contention that the evidence of the value of the chain saw was not sufficient to properly guide the jury. The owner testified without objection that the value of the saw on March 5, 1961, was $75 and that its cost new was $89.50. A neighbor who retrieved the saw from Buffalo Creek also testified that the value of the saw was around $75. At least as to common classes of personal property, the testimony of the owner without more is sufficient to justify submitting to the jury the issue of the value of such property. State v. Brewer, Mo., 286 S.W.2d 782, 783 [1]; State v. Willis, Mo., 328 S.W.2d 593, 594 [2]. The evidence as to value was clearly sufficient.

Marvin Sreaves, the prosecuting witness, 28 years old, lived on a farm in McDonald County about nine miles west of Goodman. He owned a power chain saw which on Sunday, March 5, 1961, was setting on an old tire casing near the driveway leading to his house from the highway. It was seen in that position at about 7 p. m. but was not there when Mr. Sreaves looked for it about 9 p. m. Approximately three weeks later it was found in Buffalo Creek about a quarter of a mile from the house.

The road in front of Mr. Sreaves's home runs generally east and west, and Buffalo Creek flows through the Sreaves farm about one-fourth of a mile south of the highway. The Sreaves home was between the highway and the creek about 100 yards south of the highway.

On Sunday, March 5, 1961, at about 8 p. m., Marvin Sreaves, his wife and daughter were returning from a visit with his wife's folks who lived near Springfield. When about 100 yards east of his driveway, he came upon a red and white 1955 Buick headed east in the ditch on the south side of the road. A man and a boy stepped out into the road and flagged him down. Mr. Sreaves brought the pickup truck he was driving to a stop about even with the man and the boy who were near the front of the Buick. It was dark and the headlights of the pickup truck were on. Only the parking lights on the Buick were lighted. A light rain was falling, a storm was threatening, and there were occasional flashes of lightning.

At the trial Mr. Sreaves identified the defendant Roy Walker, 47 years old, as the man who stopped him and a nephew Frankie Walker, 15 years of age, as the boy. A third man seated under the steering wheel of the Buick was identified as Claude Walker, a brother of the defendant and the father of Frankie. The defendant asked Mr. Sreaves for help in pulling the Buick from the ditch. Sreaves drove to his house and got a chain. When he returned in about ten minutes the defendant and Frankie Walker were still there but the other man had disappeared. After several attempts Sreaves succeeded in pulling the Buick out of the ditch. The defendant offered to pay Sreaves for his trouble but Sreaves refused to accept anything and the Buick was driven away toward the east.

While Sreaves was helping to get the Buick out of the ditch, he became suspicious of the men. He smelled liquor on the defendant's breath and the defendant appeared nervous when Mr. Sreaves told him where he lived. When Mr. Sreaves asked the defendant and his nephew where they lived, the defendant said Anderson and Frankie at the same time said Neosho and then stated that it was between Anderson

and Neosho. He could not get the license number as the Buick drove away because the license plate was not illuminated, so he followed the Buick up the road until it turned around and headed west again. When the Buick passed his house, Mr. Sreaves went into the driveway, left his pickup truck, took his automobile, so as not to arouse suspicion, and continued to follow the Buick until it again turned around and headed back east. The Buick was not traveling fact, but just after it passed the Sreaves home it slowed down and a man ran out of the brush on the north side of the road, jumped into the car, got under the steering wheel and drove away. When the Buick slowed down, Mr. Sreaves was able to obtain the license number but he continued to follow it about two miles further east until it turned off onto another highway. It was approximately fifty minutes from the time that Marvin Sreaves was flagged down until he last saw the Buick. He returned home, called the State Patrol and reported the occurrence. He then checked his tools and found that his chain saw was missing.

Len Leader, a carpenter 18 years of age who lived about a mile west of Marvin Sreaves house, went to the Sreaves home at approximately 7 p. m. on March 5. There was no one at home but as he was leaving he noticed the chain saw on the tire casing near the driveway. Roy Sreaves, 34 years of age, a brother of Marvin, passed Marvin's home at 7:45 p. m. and saw a red and white Buick setting beside the road without any lights on, but as he approached it the parking lights were turned on. There appeared to be two persons in the car. At that time the Buick was still on the road and not in the ditch. Gary Kelly, 18, who lived about three miles west of Marvin Sreaves, saw a red and white Buick in the neighborhood at about 4 or 4:30 p. m. The Buick was going slowly west about 15 or 20 miles an hour and then turned and went back east.

The license number taken by Mr. Sreaves had been issued to Claude Walker, Seneca, Missouri, for the Buick automobile. A search warrant was obtained on March 6, and a search was made at the Walker house; the Buick was there but the saw was not found. Bruce Poindexter, 15, who lived about a mile from Marvin Sreaves's home, found the chain saw later in March 1961 laying back under some logs and an old drift in about the middle of Buffalo Creek. His father fished the chain saw out of the water, the sheriff's office was notified, and the saw was eventually returned to Marvin Sreaves.

The defendant and Frankie, Barbara, and Joan Walker, all children of Claude Walker, testified in the defendant's case. Defendant's evidence tended to show that on March 5, 1961, he, his wife, and two children were living with his brother Claude, his wife, and six children at the home of Claude Walker about four miles north of Seneca. At about 7:30 p. m. on that day a Fred Moody came to the Claude Walker home and asked the defendant to drive him to Goodman. The defendant had known Moody in California and had seen him recently in Joplin. Claude had a toothache and would not make the trip but he permitted the defendant to use his automobile, and Frankie Walker, son of Claude, went along. The defendant and Moody were both drinking beer and some whisky. The defendant permitted Moody to drive the Buick and while Moody was taking a drink the automobile went off the road and into a ditch. According to defendant's testimony while Mr. Sreaves was getting the chain Moody insisted that he was going to try again to drive the car (which was tilted at a dangerous angle) out of the ditch, whereupon the defendant opened the door on the driver's side and started to pull Moody from the car but Moody got out on the right side and disappeared. The defendant's evidence was that he and Frankie drove east, then back west and east again looking for Moody. When they found him he was east on the left side of the road and got into the rear of the automobile. Frankie drove the Buick after it was pulled from

the ditch. He drove to the Log Cabin at Racine where Moody was let out of the car and Frankie and the defendant drove on home reaching there about 9 p. m. The defendant testifying in his own behalf admitted that he had been convicted in Missouri in 1935 for tampering with a motor vehicle and was placed on probation, but that he had no convictions since that time other than traffic violations and a conviction in California "for fighting".

With commendable frankness the state concedes that "a close question exists as to the sufficiency of the evidence to take the case to the jury" and that it "has been unable to find a Missouri case with a similar factual situation". The state, admitting that the evidence as to the criminal agency of the defendant is entirely circumstantial, properly asserts that the defendant's connection with the crime can be proved by circumstantial evidence, citing State v. Brewer, Mo., 325 S.W.2d 16, 20 [12], and 52 C.J.S. Larceny § 137, p. 982.

█ Where the evidence of defendant's agency in connection with the theft charged is entirely circumstantial, the facts and circumstances relied upon by the state to establish guilt must not only be consistent with each other and with the hypothesis of defendant's guilt, but they must also be inconsistent and irreconcilable with his innocence and must point so clearly and satisfactorily to his guilt as to exclude every reasonable hypothesis of innocence. State v. Murphy, 356 Mo. 110, 201 S.W.2d 280, 282 [2].

The essential facts upon which the state depends as shown by the conclusions drawn in its printed argument are that the "defendant and his companions were in the neighborhood three hours or more"; that they "were in front of the Sreaves' farm home at about 7:45 p. m."; that they "had at least fifteen minutes or more in which to go one hundred yards up the drive and get the chain saw and return to the car before getting in the ditch"; that after "Sreaves was flagged down and left to get

a chain the third person disappeared and did not reappear until the Buick picked him up"; that it "would appear that the third person had from thirty to forty minutes to leave the Buick, take the chain saw to Buffalo Creek one-fourth of a mile away and place it in a drift and return to the road where he was picked up"; that the third person was Claude Walker; that "he could have crossed from the south side of the road where Buffalo Creek was located to the north from where he reappeared"; that "when he was picked up he drove the Buick rather than got into the back seat"; and that from "the State's evidence the jury could find that defendant and companions had an opportunity to take the chain saw and further, that defendant and companions had an opportunity to dispose of the chain saw after Marvin Sreaves had been flagged down."

█ On the facts favorable to the state it is apparent that the defendant and his companions had an opportunity to steal the chain saw. It is not so clear, however, that the third person under the circumstances and in the time specified could or would have carried the saw a quarter of a mile, presumably in strange territory, in darkness on a rainy night and deposited it in the middle of Buffalo Creek under a pile of driftwood. But we assume that the opportunity existed, as the state contends, to conceal the saw in Buffalo Creek as well as to steal it. We will further assume that the conduct of the defendant and his companions was highly suspicious. The rule of law is well established that circumstantial evidence merely showing that the defendant had an opportunity to commit the theft charged and creating a suspicion of guilt without more is insufficient to make a submissible case. State v. Murphy, 356 Mo. 110, 201 S.W.2d 280, 282 [5]; 52 C.J. S. Larceny § 137c(2), p. 983. See also State v. Watson, Mo., 350 S.W.2d 763, 767-768 [3].

█ We have searched the record and find no incriminating circumstances other

than suspicious conduct and an opportunity on the part of the defendant and his companions to commit the theft. These circumstances alone are not inconsistent and irreconcilable with the defendant's innocence and do not point so clearly and satisfactorily to guilt as to exclude every reasonable hypothesis of innocence. Therefore the evidence is insufficient to make a submissible case and the conviction must be set aside. State v. Murphy, 356 Mo. 110, 201 S.W.2d 280, 282 [4]; State v. Shrum, 347 Mo. 1060, 152 S.W.2d 17, 19–20 [3,4]; State v. Wilson, 345 Mo. 862, 136 S.W.2d 993, 997 [5]; State v. Holt, Mo., 106 S.W.2d 466; State v. McMurphy, 324 Mo. 854, 25 S.W.2d 79, 81 [1]; State v. Archer, Mo., 6 S.W.2d 912 [1]; State v. Culbertson, Mo.App., 74 S.W.2d 375, 377 [4]. The facts in the Murphy case appear to have greater probative value than those in the instant case. A stationary gasoline engine disappeared from the place where it was located in the yard of a vacant farm house abutting a public highway; it was never recovered. There was evidence that the defendant stopped his truck in the road nearby on the day of the larceny and shoe tracks in the road where the truck was stopped were similar to those around the place where the engine was kept. This and other evidence was held insufficient for a prima facie case and the defendant was discharged. The facts in the other cases cited are also quite persuasive of the result we have reached.

The defendant further contends that the state failed to establish the corpus delicti and that an instruction should have been given on attempted theft. Both of these contentions are related to the sufficiency of the evidence, but in view of the conclusion we have reached they need not be considered. Nor is it necessary for us to examine the sufficiency of other parts of the record.

■■ Where a judgment of conviction is reversed, the cause may be remanded if it appears that the state may be able to produce additional evidence having suffi-

cient probative value. See State v. Watson, Mo., 350 S.W.2d 763, 768 [4]. On the present record, however, there is nothing to indicate that the evidence has not been fully developed.

Accordingly the judgment is reversed and the defendant is discharged.

All of the Judges concur.