**STATE of Missouri, Respondent,**

**v.**

**Byron D. BURKE, Appellant.**

**No. 55089.**

Supreme Court of Missouri,
Division No. 2.

Jan. 11, 1971.

Motion for Rehearing or to Transfer to Court
En Banc Denied Feb. 8, 1971.

John C. Danforth, Atty. Gen., Dale L. Rollings, Asst. Atty. Gen., Jefferson City, for respondent.

John B. Mitchell, St. Joseph, for appellant.

FINCH, Judge.

This case, written on reassignment, involves an appeal from a conviction of burglary in the second degree for which defendant was sentenced to two years imprisonment. We affirm.

■ The first point raised is that the evidence was insufficient to sustain the conviction and that defendant's motion for judgment of acquittal should have been sustained. We overrule this contention. The evidence disclosed that St. Joseph police officers received word at about 3:00 a.m. on September 23, 1967, that a burglary was in progress at the Summers Oldsmobile Company building, about seven blocks away. When the officers arrived they drove into an alley on the east side of the building. A window on the lower floor was found slightly ajar. A canine corps officer turned his dog loose at the window, from which point it went a short distance along the passageway between the building and a shed or garage which was approximately three feet from the building itself. The dog stopped at the side of the garage and started growling and trying to climb the wall. The officer looked up and observed a man's foot extending from the edge of the roof. The officer called to the man to come down but at first he did not move. However, when the officer drew his gun and shined a light on the man (defendant herein) he did come down off of the building. He was immediately taken into custody, given necessary warnings and searched. In that search the officers found a small metal pry bar and a pair of white cloth gloves in the defendant's pocket.

The owner of the automobile company testified that to the best of his knowledge the windows and doors of the building had been closed when he left the night before. When the officers checked the partially opened window they found pry marks on the metal part of the window adjacent to the lock. The lock itself was not broken but one of the officers testified that he would say it had been sprung. Inside there was a footprint on the metal cabinet below the window.

Inside the building a door at the bottom of some steps leading from the basement to the upper floor had been closed and locked that night with a padlock, but someone had opened that door by removing the pins from the door hinges and then taking the door off its hinges and placing it on its side.

The building was searched but no other person was found. A search for fingerprints was made but none were obtained, although some sets of glove prints were observed on the vending machines. There apparently was no attempt to identify the footprint on the metal cabinet beneath the window.

■ The defendant argues that there was no evidence that the defendant had been in the burglarized building, that there was no evidence that the gloves or iron bar were used in connection with the burglary, that property allegedly taken was not found on the person of the defendant, and that the mere presence of defendant at or near the scene was not sufficient, without more, to convict him of burglary. He cites cases such as State v. Allen, Mo., 420 S. W.2d 330, for the proposition that mere presence of the accused at the scene of the crime and an opportunity to have committed the offense is not sufficient circumstantial evidence to justify conviction. That is the rule, but in this case (as in Allen) there was more than mere presence and an opportunity to have committed the burglary. While there was no direct evidence that defendant had been in the building, the circumstantial evidence was sufficient to justify the jury in inferring that he had been.

The evidence as summarized above shows that within minutes after the police received word that the burglary was in

progress they found defendant alone a few feet from the open window. The action of the police dog indicated that defendant had gone from the open window to the roof of the garage where he was found hiding. The evidence shows conduct on defendant's part in trying to hide and escape detection. Pry marks were found on the window and vending machines on both floors had been pried open. Defendant, when arrested, had a small pry bar in his pocket. No fingerprints were found but glove prints were found on the vending machines and the defendant had cotton gloves in his pocket when arrested. This evidence was ample to justify the jury in finding defendant guilty of burglary.

It is true, as defendant points out, that whereas the evidence indicates that money from the machines would have been in the form of coins, particularly quarters and nickels, the defendant, when arrested, had in his possession $11.20, of which $10.00 was in dollar bills. However, the jury acquitted the defendant of burglarious stealing and it was not necessary to a conviction of burglary that defendant have in his possession any stolen money or other items. The other evidence was sufficient to sustain a conviction of burglary.

Defendant's second complaint is that the circumstantial evidence instruction given by the court was prejudicially erroneous. The instruction given was as follows:

## "INSTRUCTION NO. 5

"You are further instructed that evidence is of two kinds, direct and circumstantial. Evidence is direct where a witness testified directly of his own knowledge of the main fact or facts to be proven. Circumstantial evidence is the proof of facts and circumstances in a given case from which the jury may infer other and connected facts which usually and reasonably follow, according to the common experience of mankind.

"Crime may be proven by circumstantial evidence as well as by direct testimony, but to warrant the conviction of the defendant upon circumstantial evidence alone, it is not sufficient that the facts proven coincide with, account for, or even render probable the hypothesis sought to be established, but they must exclude every other hypothesis but the one sought to be established, namely the guilt of the defendant; and unless the facts and circumstances proven are consistent with each other, and with the guilt of the defendant, and inconsistent with and unexplainable upon any other reasonable theory than that of the guilt of the defendant, under the law you would not be justified in convicting him upon such evidence alone."

It is defendant's position that Instruction No. 5 was deficient in that the instruction did not advise the jury that the facts and circumstances proven must be consistent with each other and point so clearly and satisfactorily to defendant's guilt that every reasonable hypothesis of his innocence is excluded. In making this contention, defendant cites and quotes from the case of State v. Murphy, 356 Mo. 110, 201 S.W.2d 280, 282, wherein the court in passing on the sufficiency of the evidence said this: "Inasmuch as the evidence of defendant's agency in the theft is entirely circumstantial the facts and circumstances relied upon by the state to establish guilt *must not only be consistent with each other and with the hypothesis of defendant's guilt, but they must also be inconsistent and irreconcilable with his innocence, and must point so clearly and satisfactorily to guilt as to exclude every reasonable hypothesis of innocence.*" (Emphasis supplied.) Defendant says that similar language has been used in other cases and that any instruction which contains less than the italicized language in the quotation from Murphy is prejudicial because it does not properly declare the law on circumstantial evidence.

We do not agree. The court in Murphy was not considering a jury instruction and did not purport to hold that the language used therein in discussing the rule would

be required language in an instruction. However, in State v. Armstrong, Mo., 361 S.W.2d 811, this court did consider a contention somewhat similar to the one here made in that there the defendant contended that the circumstantial evidence instruction given in that case did not emphasize with sufficient clarity the requirement that circumstantial evidence must be inconsistent with innocence. In overruling that contention, this court said, 361 S.W.2d l.c. 818:

"A careful consideration of Instruction No. 6 discloses that it is not subject to the criticism levelled against it. The terminology of an instruction somewhat similar was approved in State v. Fletcher, Mo. Sup., 244 S.W.2d 98, 103. *In any event, no certain and specific terminology is required in a circumstantial evidence instruction so long as it advises the jury, in substance, that the circumstances proved must be consistent with each other and with the hypothesis that the defendant is guilty, and inconsistent with any theory of his innocence and with every reasonable hypothesis, except that of guilt.* State v. Conway, 348 Mo. 580, 154 S.W.2d 128, 131(4, 5); State v. Maggard, 250 Mo. 335, 157 S.W. 354, 357." (Emphasis supplied.)

In the case of State v. Craig, Mo., 406 S.W.2d 618, 621, the court approved a circumstantial evidence instruction which did not contain the language which defendant insists is a prerequisite in such an instruction. In Craig the instruction contained the following language: "Crimes may be proven by circumstantial evidence, as well as by direct testimony of eye-witnesses, but to justify conviction, the facts and circumstances in evidence must be consistent with each other and with the guilt of the defendant, and inconsistent with any reasonable theory of the innocence of the defendant."

Instruction No. 5 in this case informed the jury as to the test they should apply, namely, that the facts had to be consistent with each other and with the guilt of the defendant, and inconsistent with and

unexplainable on any reasonable theory other than guilt of the defendant. It met the test prescribed in State v. Armstrong and the holding in State v. Craig, both supra. It was a proper instruction.

Finally, defendant complains of the verdict-directing instruction on the burglary charge, which was as follows:

## "INSTRUCTION NO. 6

"If you find and believe from the evidence beyond a reasonable doubt:

First, that on the 23rd day of September, 1967, in the County of Buchanan, State of Missouri, the defendant, Byron Burke, opened a closed door in a building located at 1508 Frederick Avenue in St. Joseph and occupied by Summers Olds Company and entered therein, and

Second, that he did so with the intent to steal property located on the second floor of said building, and

Third, that at that time money was kept in a coca cola vending machine on the second floor of said building secured by said closed door,

then you will find the defendant guilty of burglary in the second degree.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the foregoing, you must find the defendant not guilty of that offense.

If you do find the defendant guilty of burglary in the second degree, you will fix his punishment at confinement in the custody of the Department of Corrections for a term fixed by you, but not less than two nor more than ten years."

The information herein charged that defendant "did feloniously and burglariously, forcibly break and enter a certain building located at 1508 Frederick Avenue, St. Joseph, Missouri, the property of Summers Olds, Inc., a corporation, with the felonious and burglarious intent to steal, take

and carry away certain goods, wares, merchandise or personal property then and there kept and deposited in the said building; * * *."

At the conclusion of the evidence, and outside of the presence of the jury, Judge Connett advised the attorneys that he believed there was not sufficient evidence to justify an instruction on burglary by breaking and opening the window for the reason that there was not sufficient evidence that it had been closed. However, he stated that he felt that the breaking of the locked door between the first and second floors inside the building by removing the pins and taking it off the hinges constituted burglary. Consequently, the court drafted and gave Instruction No. 6.

We are not concerned on this appeal with whether the evidence would have justified submission of the case on the basis of breaking and entering the window because the case was not submitted on that basis. Rather, the question confronting us is whether the breaking and entering of the inner door constituted burglary under § 560.070, V.A.M.S., under which defendant was charged. The pertinent portion of that section provides as follows:

"Every person who shall be convicted of breaking and entering any building, the breaking and entering of which shall not be declared by any statute of this state to be burglary in the first degree, * * * in which there shall be at the time any human being or any goods, wares, merchandise or other valuable thing kept or deposited, with the intent to steal or commit any crime therein, shall, on conviction, be adjudged guilty of burglary in the second degree."

This specific question apparently has not been decided previously in Missouri but several states with statutory provisions comparable to § 560.070 have held them to cover and be applicable to the breaking of inner doors. For example, in Bowie v. Texas, Tex.Cr.App., 401 S.W.2d 829, the defendant was charged with burglary of a building leased for the manufacture and shipping of dresses. The evidence indicated that an outside overhead door to the building was open at the time of the offense and that entrance to an inside loading dock in the building could be made in that manner. A sliding door leading from that dock to the shipping and storage department was opened, and the question was whether the opening of this inner door was burglary. In answering in the affirmative, the court said, l. c. 831: "Appellant contends that the evidence shows that the building was entered through the open back door, and that he therefore could not have broken into the building. Entry through an open exterior door does not preclude a verdict of guilty where the evidence shows that an inner room or compartment of the building is broken into. Thomas v. State, 131 Tex.Cr.R. 269, 97 S. W.2d 955; Anderson v. State, 17 Tex.App. 305."

In State v. Edell, Del., 183 A. 630, defendant was charged with breaking and entering a dwelling house to commit larceny, in violation of a statute which prohibited breaking and entering a dwelling house in the nighttime with intent to commit a felony. In upholding the conviction of the defendant, the court said, l. c. 630: "Breaking and entering does not mean that the door or window must actually be broken, but the lifting of a latch, the turning of a knob, constitutes a breaking and entering of a door as to which a person is not entitled to enter. I may say also that it is not necessary that the door broken or entered shall be an outside door. If a thief enters a house through a door inadvertently left opened or entered through an open window, yet later turns a key or lifts a latch or turns a knob and opens an inner door with intent to commit some felony in that inner room, then the offense of breaking and entering with intent to commit robbery is complete."

In Page v. State, 170 Tenn. 586, 98 S. W.2d 98, the defendant was charged with burglary by breaking and entering an audi-

tor's room in a hotel with intent to commit larceny. He was prosecuted under a statute which made it a felony to break or enter into a business house with intent to commit a felony.[1] In upholding the conviction under said statute, the court said, l. c. 99: " 'A burglary may be committed by a breaking on the inside; for though a thief enter the dwelling house in the nighttime, through the outer door left open, or by an open window, yet if, when within the house he turn the key, or unlatch a chamber door, with intent to commit felony, this is burglary. Hence where a servant, who sleeps in an adjacent room, unlatches his master's door and enters his apartment, with intent to kill him, or to commit a rape on his mistress, it is burglary. And so where a person left in charge of a house enters, and steals from, a closed room which, from his employment, he has no right to enter.' Wharton's Criminal Law, § 976." After then pointing out that the conviction is sustained not only by Wharton but by cases cited in Corpus Juris and Ruling Case Law, the opinion then says: "Upon the same reasoning, one, although lawfully in a business house, commits the offense described in section 10913 of the Code when he breaks and enters into a room of that business house, which he has no right to enter, for the purpose of committing a felony."

In State v. Scripture, 42 N.H. 485, defendant entered a freight and passenger depot in the daytime through an open door and he then opened a door leading into the ticket-office from which he took money. In upholding a conviction of breaking and entering the railroad depot, the court said, l. c. 488: "It is said that 'if a person leaves his doors or windows open, it is his own folly or negligence, and if a man enter therein it is no burglary; yet if he unlock an inner or chamber door, it is so.' 4 Black. 226. The same doctrine is laid down in 2 East P.C. 488, 458; 1 Hale 553; Whart.Cr.Law 600; 1 Russ. Crimes 790, 791. Com.Dig. Justice P. 3; Rosc.Crim. Ev. 340; 7 Dane's Abr. 136, 3 Greenl.Ev., sec. 76; State v. Wilson, Coxe 439. From these authorities it appears that one who, having entered through an open outer door of a dwelling-house, then breaks and enters an inner door, is guilty of breaking and entering the dwelling-house. The respondent was, therefore, properly convicted of breaking and entering a railroad depot, under chapter 2078 of the Pamphlet Laws (Laws of 1858, 1893)."

The conclusion that breaking an inner door is burglary under a statute such as ours is in accord with the statement in 12 C.J.S. Burglary § 6, p. 671, as follows: "If a person enters a house through an open door or window, and breaks or opens an inner door, window, or other obstruction, with intent to commit a felony, or if a servant, guest, or other person, being lawfully in a house, enters a room which he has no right to enter, with felonious intent, by breaking or opening an inner door, it is as much burglary as if he had entered by breaking an outer door or window. Such a breaking is a breaking and entering of the house. This rule generally applies under statutes punishing the breaking and entering of dwelling houses and other buildings, as well as at common law; but sometimes a statute defining burglary expressly or impliedly requires that the breaking shall be an exterior one, and under such a statute, entering through an open outer window, followed by a technical breaking by opening a closed inner door, will not constitute the offense."

Likewise, in 13 Am.Jur.2d, Burglary, § 21, p. 332, it is stated: "If a person enters a building through an open door or window, it does not constitute a burglarious entry at common law, but if he afterward breaks an inner door with the necessary intent, he may be prosecuted for burglary."

As indicated in the quotation from State v. Scripture, the rule at common law was

---

1. Tennessee had separate statutes relating to breaking and entering houses (as does Missouri).

that such a breaking of an inner door is burglary. In 2 East, P.C. 488, it is stated: "But though a thief enters a dwelling-house in the night-time through the outer door being left open, or by an open window; yet if when within the house he turn the key of or unlatch a chamber door with intent to commit felony, this is burglary * * *."

■ Defendant's brief points out that § 560.055, V.A.M.S., makes the breaking of an inner door of a dwelling house burglary,[2] but that § 560.070 contains no such provision. This difference supposedly indicates an intention on the part of the General Assembly that the breaking of an inner door is not to be considered an offense under § 560.070. We do not agree with that inference and do not attach any significance to the fact that an inner door is not mentioned in § 560.070, whereas it is in § 560.055. We so conclude because § 560.055 is one of several sections relating to burglary of dwelling houses in which specific reference is made not only to *inner* doors but also to *outer* doors. For example, § 560.040, which defines burglary in the first degree, provides that the breaking of an outer door, window, etc., of a dwelling house in which some person is present is burglary in the first degree. Likewise, § 560.050 provides that if one enters a dwelling house in a manner not constituting burglary with intent to commit a felony and then breaks an outer door, window, etc., to get out, it is burglary, and § 560.060 provides that if one is admitted with consent of the occupant and then breaks an inner door with intent to commit a felony, it is burglary. Under such circumstances, it is understandable why § 560.055 specifically provides that one who, having entered a dwelling house through an open door or window, then breaks an inner door, shall be guilty of burglary.

In contrast, the Legislature in § 560.070, with reference to burglary of buildings

other than dwelling houses, provides no restrictions or limitations with respect to either outer doors or inner doors. Section 560.070 is stated in general terms and, we conclude, should be construed as at common law and as in the various states to which we have made reference above. On that basis, we hold that the breaking of the inner door constituted burglary in the second degree, in violation of § 560.070.

In connection with this question, the defendant also asserts in his brief that Instruction No. 6 was contrary to and a variance from the charge contained in the information. We do not agree. The information charges the defendant in general language, comparable to the general language contained in § 560.070. We already have held that that language is broad enough to cover the breaking of an inner door as well as an outer door. Under those circumstances, it was proper to submit the issue of breaking of the inner door in Instruction No. 6, and in so doing there was not a variance from the information.

Judgment affirmed.

All of the Judges concur.

---

2. Section 560.055, V.A.M.S., provides as follows: "Every person who, having entered the dwelling house of another through an open outer door or window, or other aperture not made by such person, breaks an inner door of the same house, with intent to commit any felony or to steal, shall be adjudged guilty of burglary in the second degree.