STATE of Missouri, Respondent,

v.

Edward J. FOWLER, Appellant.

No. 56397.

Supreme Court of Missouri,
Division No. 1.

Nov. 8, 1971.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

Madigan, Hadican & Maloney, Thomas B. Maloney, St. Louis, for appellant.

HIGGINS, Commissioner.

Edward J. Fowler, with prior conviction of accessory after the fact to burglary, second degree, was convicted by a jury of burglary, second degree. The court assessed defendant's punishment at seven years' imprisonment and rendered judgment and sentence accordingly. §§ 556.280, 560.070, 560.095, V.A.M.S.

Appellant's principal complaints go to the sufficiency of evidence to sustain his conviction. He contends, point I, that the evidence was not sufficient to support a conviction of burglary, second degree, and point III, that the evidence was circumstantial and was not inconsistent with his innocence. His argument, point I, is that the evidence showed only an opportunity to commit the crime and a suspicion of guilt, State v. Murphy, 356 Mo. 110, 201 S.W.2d 280, State v. Rogers, Mo., 380 S.W.2d 398, State v. Castaldi, Mo., 386 S.W.2d 392; and, point III, that the evidence was circumstantial and showed only his presence and failed to show participation or intent, State v. Allen, Mo., 420 S.W.2d 330, State v. Irby, Mo., 423 S.W.2d 800, State v. Smith, Mo., 357 S.W.2d 120.

Statement of the evidence, much of which is direct, refutes appellant's points I and III, and demonstrates that the state made its case in all respects.

Kenneth Lee, manager of Chicken Hut, 909 Kingshighway, St. Louis, Missouri, closed and locked those premises at 11:00 p. m., March 31, 1970. He returned to the premises at about 3:00 a. m., April 1, 1970, and found that the cigarette machine had been moved from the customer area to the kitchen, broken, and cigarettes removed; that his office had been ransacked; and that a ladder was standing leading from the second floor to an opening in the roof. He had not given anyone permission to enter the premises after he secured them.

Joseph Palmer, owner of the Chicken Hut, left the premises around 8:30 or 9:00 p. m., March 31, 1970. He had been on the second floor during the day to check supplies and noted that the skylight and trap door were nailed securely. He returned to the premises, following a call from police, around 1:00 or 1:30 a. m., April 1, 1970. He, too, noted that the office had been ransacked; that the cigarette machine had been moved from the front room to the kitchen, that it had been broken and that cigarettes had been removed and placed in bags. He went to the second floor and saw that the skylight in the roof had been removed, that a hole was in the roof, and that the nails which had secured the skylight had been pulled and pried from the wood. He had not given anyone permission to enter the premises after they had been closed.

Patrolman Leonard Hennessy was on duty early April 1, 1970, working with Patrolman James Oberkramer. While patrolling in their marked automobile, they observed defendant inside the Chicken Hut behind the counter. They drove into the parking lot and "upon seeing us pull into the parking area of the restaurant he ducked down behind the counter and fled into the kitchen. * * * We went around and surrounded the building * * * we heard a noise up on the roof. We also saw another subject up on the roof attempting to climb off the roof." The other subject was William Taylor who, upon being jointly charged with this defendant, pleaded guilty. There was a trash container (Dumpster) near the building. "We climbed up on the dumper and also got up to the roof. * * * there was a hole in the roof, the skylight." Taylor went down through the hole followed by the policemen. They found him underneath some boxes, and Patrolman Oberkramer found defendant underneath the air-conditioning and heating unit. "As the officer [Oberkramer] was trying to pull him out from underneath the air conditioner, he says, 'You got me; you got me. I

guess I'll go back to the workhouse.' " Both officers noticed the ransacked condition of the premises and the broken cigarette machine. There were no signs of forced entry on the doors of the Chicken Hut, and they were in locked condition when inspected by the officers.

Patrolman Oberkramer fixed the time of the officers' arrival at the Chicken Hut at 12:35 a. m., April 1, 1970. He, too, observed defendant when he ducked down behind the counter of the Chicken Hut and when "he went through a door leading into the rear where they do the cooking." All the doors were locked. He found defendant "hiding behind the air-conditioning unit." When defendant failed to respond to a command to come out, Officer Oberkramer pulled him out by a leg. He said, "You got me. I'm going back to the workhouse."

The defense was adduced through defendant's own testimony and that of his nephew and the codefendant. The theory of the defense was that defendant had seen his 16-year-old nephew with the codefendant earlier in the evening; that from his nearby apartment he saw the codefendant in the Chicken Hut; that he suspected his nephew might be with him; that he went there and knocked on the glass; that the codefendant let him in through a door; that his only purpose was to rescue his nephew from trouble if he was there; that he had nothing to do with the burglary either by way of intent or participation; and that he ran and hid when the police drove up because he was an ex-convict.

In rebuttal, Patrolman Hennessy stated that none of the doors could be opened without a key and there were no keys present.

■ Under this evidence, there is no question that defendant was discovered in a burglarized building, that he fled and hid, that when found, volunteered an incriminating statement, and that the premises had been ransacked and cigarettes prepared for removal from the premises. De-

fendant's explanation of his presence and intent was obviously rejected by the jury; and the evidence, when viewed favorably to the verdict, fairly shows defendant's participation in the crime of burglary, second degree. See, e. g., State v. Reed, Mo., 453 S.W.2d 946; State v. Cobb, Mo., 444 S.W.2d 408.

Appellant's point II is a charge of error in permitting amendment of the information during trial to allege that the offense occurred between 11:00 p. m., March 31, 1970, and 12:35 a. m., April 1, 1970, instead of April 1, 1970, on the ground that the amendment "was a material variance from the merits of the case and prejudicial to the defense * * *."

Appellant cites no authority in support of his point; and he concedes "the rule in Missouri * * * is that a variance and/or amendment in time is not material to the merits of the case and not prejudicial to the defendant's defense."

Section 545.290, V.A.M.S., the statute of jeofails, and its counterpart, Criminal Rule 24.02, V.A.M.R., provide that the court may permit such an amendment at any time before the verdict "if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." The discretion afforded a trial judge under the statute and rule with respect to amendments relating to time to conform to the evidence has been upheld numerous times. See, e. g., State v. Tunnell, Mo., 296 S.W. 423; State v. Redding, 362 Mo. 39, 239 S.W.2d 494; State v. Brookshire, Mo.App., 329 S.W.2d 252; State v. Turley, Mo., 452 S.W.2d 65.

Judgment affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All of the Judges concur.