**STATE of Missouri, Respondent,**

**v.**

**Bobby Joe ROSS, Appellant.**

**No. 57386.**

Supreme Court of Missouri, Division No. 1.

April 8, 1974.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Bussell, Hough, Greene & Bernhardt, Kenneth W. Johnson, Joe C. Greene, Springfield, for appellant.

HIGGINS, Commissioner.

Bobby Joe Ross, with prior conviction, was charged with burglary, second degree, and stealing. He was convicted by a jury

and the court assessed his punishment at imprisonment for seven years for the burglary and five years for the stealing with the terms to run concurrently. Sentence and judgment were rendered accordingly. §§ 556.280, 560.070, 560.110, RSMo 1969, V.A.M.S. (Appeal taken prior to January 1, 1972.)

By information it was charged that Bobby Joe Ross, Guy Bass, Jr., Donald Gene Vineyard, Clifford Wayne Morelock, George Edward Miller, and Michael Buddy Perryman, on January 13, 1971, in Greene County, Missouri, feloniously and burglariously broke and entered Dillard's Department Store with intent to steal, and feloniously stole assorted shirts from Dillard's.

By an amended information filed on the day of trial, Bobby Joe Ross was charged separately as a second offender with the burglary of Dillard's and theft of assorted shirts from the store.

■ By his Point IV appellant contends the court erred in refusing him a continuance when he learned of the amended information ten minutes prior to trial.

The only changes made by the amended information were the endorsement of a witness who was not called, and the charge of defendant as a second offender, proof of which was not disputed. Appellant asserts some generalities with respect to trial strategy, but does not demonstrate how he was prejudiced by the late filing; and the record demonstrates that defense counsel were fully prepared to plead anew and to try the case.

In these circumstances it may not be said that the court abused its discretion in denying a continuance on account of the new allegations made by the amended information. Rules 24.15, 24.17, V.A.M.R.; State v. Ward, 457 S.W.2d 701 (Mo.1970); State v. Strawther, 476 S.W.2d 576 (Mo. 1972).

Appellant makes two attacks on the sufficiency of evidence to sustain his conviction: By Point III he contends he should have had a judgment of acquittal; and by Point VI he contends there was no evidence that defendant acted in concert with any other person to support Instruction 10 on that subject.

Appellant argues that the evidence was insufficient to connect him to the burglary of Dillard's; that it was insufficient to show possession of stolen goods in defendant necessary to an inference that he participated in the burglary and stealing; that evidence by way of soil samples should not have been admitted because it was irrelevant and that it was not of probative value; that the only evidence was circumstantial and was not inconsistent with an hypothesis of innocence; that there was no proof that defendant was at the burglary scene or that he aided or abetted anyone in its commission.

Allen L. Bartle was the warehouse manager for Dillard's Department Store in Springfield, Greene County, Missouri. On January 13, 1971, at 4:30 p. m., he made his usual rounds, checked the doors and locks, locked the front door and left the warehouse. He was informed about 10:30 p. m. that the warehouse had been broken and entered. When he arrived at the warehouse he found that the track door on the west side of the building where boxcars were unloaded had been forcibly opened. Several policemen were in the warehouse, shirts were missing and strewn about the floor, and two stereo sets and a television were missing. Approximately 1200–1300 man's short-sleeved shirts of different colors were missing. All bore Dillard's or Dillard's Brown-Dunkin labels. Neither Bobby Joe Ross nor anyone else had been given permission to enter the warehouse on the evening of January 13, 1971. Mr. Bartle identified a bag of shirts, Exhibit 4, as a number of the shirts found missing on January 13, 1971.

Roy J. Grimes was the store manager of Dillard's in Springfield. On January 13, 1971, he went to the warehouse at 10:30 or

11:00 p. m. He noted the loss of about 1400 shirts and three or four appliances. He had not given Bobby Joe Ross or anyone else permission to enter the warehouse on the evening in question. He, too, identified the bag of shirts as a part of the shirts found missing on January 13, 1971.

Stephen R. Ward was an area manager for Dillard's Department Stores and he, too, identified the sack of shirts as part of the stock of Dillard's of Springfield. He was the store officer who signed the receipt at the police department for return of the bulk of the lost shirts, most of which have now been sold or transferred to other stores. He had not given Bobby Joe Ross or any other person permission to be in the warehouse on January 13, 1971.

Elbert Thompson resided at 425 West Portland in Springfield, Missouri, on January 13, 1971. His home was separated from the residence of Joy Beaver at 433 West Portland by approximately seven feet, three inches. His bedroom window is opposite a window in the garage at 433 West Portland. Between 9:00 and 9:30 p. m., he and his wife drove into their driveway and noticed two strange cars in the neighboring driveway. A short time later they heard a noise and, upon looking through their bedroom window, saw four men in the garage "operating their hands in front of them. * * * We could see plastic articles of some kind. * * * we saw six different people there. * * * they didn't all leave together." He called the police and noted their arrival at which time only four of the six persons were present.

Helene Thompson, wife of Elbert, also observed the events at 433 West Portland. "* * * there wasn't supposed to be anybody at home and that alarmed me and I looked to see what was going on. * * * I saw some fellows in the garage working * * * passing back and forth before the window and after while I noticed something that looked like shirts or blouses in plastic containers." She also

had seen a car without lights back to the garage and observed six individuals altogether.

Joy L. Beaver resided at 433 West Portland on January 13, 1971. She left for work at 5:45 p. m. to be gone until after 2:00 a. m., and no one else, including Bobby Joe Ross, was in the home. She had never given him permission to be in her home. Later that night she saw bags like the bag of shirts in evidence in her home. She had no prior knowledge they were there. She made no claim to the shirts and consented to their removal from her home by the police. She did know a "Red" Morelock and he was always welcome in her home; but she had not given anyone permission to bring shirts into her home. Her home was so constructed that a person could go from the garage into the house proper without going outside.

George H. Brinkman of the Springfield Police Department went to 433 West Portland on January 13, 1971, in response to a dispatch "on the call of a possible house burglary at 9:46 p. m." He arrived in a short time and found other officers already present. "Upon approaching this house I observed a subject known to me in the garage of this home through the window on the east side of the house. * * * the garage light was on. * * * It appeared that he had his hands outstretched in front of him, possibly putting something in a sack, or something like that, from the stance he was in as I observed him." He next saw this subject coming through the kitchen. "He observed me through the front door and he immediately turned quickly and proceeded back into the house." Officer Brinkman followed, apprehended the subject in the area between the kitchen and dining room, and "placed him under arrest for investigation of burglary and larceny." Officer Brinkman then went into the garage and saw "sacks of shirts," one of which was the sack entered in evidence; they bore labels of Dillard's stores. Officer Brinkman returned from the garage into the utility room and "out

of the corner of my eye I observed another subject hiding under a box * * *. This subject was placed under arrest * * * for investigation of burglary and larceny." Altogether, four individuals were found in the house, one of whom was Bobby Joe Ross. Officer Brinkman had seen all four individuals on several different occasions "in the company of one another." At the time the four individuals were arrested, the shirts were in the garage and were taken by the police as evidence.

George Larbey, also a Springfield policeman, with another officer, went to 433 West Portland around 9:30 p. m. pursuant to "a call of a possible house burglary in progress." When he arrived, Officer Woods was at the rear of the house and Officer Brinkman was at the rear corner going to the front. He looked through the window into the garage and saw two persons whom he recognized. He went into the house and found an individual "hiding behind the couch in the living room" and placed him under arrest. Altogether, four persons were arrested, one of whom was Bobby Joe Ross who was arrested by Detective Crocker "hiding in the closet under some clothes." He had seen Bobby Joe Ross with the other three persons on at least one previous occasion. The shirts had been found in the garage at the time of the arrest of Bobby Joe Ross.

Detective Ray Crocker went to 433 West Portland on January 13, 1971, when "called on the radio that there was a burglary in progress." Upon arrival he went to the front door and noted the presence of other officers. He found Bobby Joe Ross hiding in a closet and placed him under arrest. Four people were arrested altogether and Detective Crocker had seen Bobby Joe Ross in company with the other three on more than one occasion in the month prior to January 13, 1971.

Officer Gary Dishman arrived at 433 West Portland between 9:30 and 9:40 p. m., January 13, 1971, after receiving a call

reporting "a possible house burglary in progress." He was present when Officer Crocker located Bobby Joe Ross hiding in a closet. Three other persons were found in the house and he had seen the four together on more than one occasion in the month prior to January 13, 1971. A half hour to an hour after these events at 433 West Portland, Officer Dishman went to Dillard's warehouse and was present when Mr. Bartle and Mr. Grimes arrived. "A large overhead door on the west side of the warehouse * * * had been pried open from the bottom. * * * this was a fairly new building * * * and there was fresh ground work in the area, dirt, red mud." He had observed the shoes of the persons arrested at 433 West Portland, including those worn by Bobby Joe Ross, and "his shoes, along with all the other subjects', were very muddy with this red mud." When he went into the warehouse he noticed that there were several shirts scattered around "and also there were mud tracks, bits of mud inside the building." Officer Dishman gathered several samples of soil from inside the warehouse and immediately outside the warehouse where footprints in the mud led from the broken door. He, along with Detective Ayres, took these samples, along with the shoes worn by Bobby Joe Ross and the other three persons arrested at 433 West Portland, to Jefferson City for analysis by the highway patrol laboratory.

Michael J. Brizendine, a laboratory technician for the highway patrol, performed soil analysis tests on the soil samples given him by Officers Dishman and Ayres. In his opinion, all the samples "had relatively the same general density."

Emma Hayter said she had been with Bobby Joe Ross at her apartment from the afternoon of January 13, 1971, until about 9:00 p. m. Officer Larbey said he saw Mrs. Hayter at the R. C. Lounge at about 9:00 p. m. and again later that evening.

■ With respect to appellant's arguments under Points III and VI, this evi-

dence was sufficient to permit the jury to find: the prior presence at the scene of the burglary of Dillard's warehouse of one or more of the men arrested at 433 West Portland; defendant's association at 433 West Portland and on previous occasions with the three others arrested at 433 West Portland; defendant's association with the stolen goods and joint exercise of control over them; defendant's guilty knowledge and intent. The scientific opinion, c. f. State v. Murphy, 356 Mo. 110, 201 S.W.2d 280 (banc 1947), of Mr. Brizendine was not the subject of any complaint in defendant's motion for new trial and it tended to place defendant and his three associates with whom he was arrested at the scene of the burglary. The locked door of the warehouse was shown to have been broken, and shirts later found at 433 West Portland were missing from the warehouse. Six men were observed manipulating the shirts in the garage, and defendant was among the four remaining and found in the house with the shirts. These factors, together with defendant's and his associates' attempts to conceal themselves, linked defendant with the shirts stolen in the burglary. See State v. Cobb, 444 S.W.2d 408 (Mo. banc 1969); State v. Key, 411 S.W.2d 100 (Mo.1967).

It may not be said that this circumstantial evidence case is insufficient to support defendant's conviction and the instruction on concert of action. State v. Phillips, 452 S.W.2d 187 (Mo.1970); State v. Tierney, 371 S.W.2d 321 (Mo.1963).

Appellant contends, Points I and II, that the court erred in overruling defendant's motion to suppress evidence consisting of the bags of shirts taken into custody by the police at 433 West Portland on January 13, 1971, and admitting the shirts into evidence.

It was not disputed that the police had no warrants for the arrest of defendant at 433 West Portland or for the search of those premises; and defendant argues that the conduct of the police in discovering the shirts and their use in evidence must be governed by the law relating to arrests without a warrant and searches and seizures incident to such arrests. Appellant asserts there was no probable cause for defendant's arrest and, therefore, the arrest was not lawful and the search and seizure could not be a lawful incident of a lawful arrest; that even if the arrest were valid, the search and seizure went beyond the person and immediate area surrounding the accused; that there was no knowledge of the burglary of Dillard's to justify the seizure of the shirts at the time of arrest.

In the circumstances of this case, it is not necessary to review the many ramifications of the law of arrest, search and seizure that appellant would raise by his contentions and argument. In short, defendant had no standing upon which to base his motion to suppress and his objection to evidence. Standing to object to a search and seizure and use of the fruits in evidence is predicated upon a possessory interest in the items seized; a possessory interest in, or legitimate presence on, the premises searched; or is "automatic" where the same possession needed to establish standing is an essential element of the crime charged. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); In re J.R.M., 487 S.W.2d 502, 508–509 [2, 3] (Mo. banc 1972); Brown v. United States, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969).

Defendant has asserted no proprietary interest in the bags of shirts seized at 433 West Portland; he has shown no possessory interest in the premises at 433 West Portland occupied by Mrs. Beaver; and, although present on the premises when searched, his presence was not legitimate because Mrs. Beaver did not know Bobby Joe Ross and had not given him permission to be on her premises; she had not given anyone permission to bring the stolen shirts onto her premises, and they

were removed by the police with her consent. Accordingly, the search and seizure of the shirts and their admission in evidence were not in violation of any of this defendant's rights with respect to search and seizure.

 Appellant contends, V, that the court erred in overruling his objection to a portion of the State's closing argument. Appellant has furnished only that part of the arguments of which he complains:

"MR. COOLEY: * * * Gentlemen, I've taken up a lot of your time, and I just have one thing to say. If there's any doubt in your mind today whether or not this gentlemen entered the Dillard's Store and took those shirts with these other gentlemen and was found less than four and a half hours later with them, that's no coincidence, and if you want to acquit him, why don't you, when you come back in from your jury room, pick up the sack of shirts and give them to him, maybe they're his.

"MR. LILLEY: Now, if the Court please, that's not proper argument. MR. COOLEY: Would you like a case citation? THE COURT: Overruled."

Appellant recognizes the discretion accorded the trial court with respect to control of arguments; however, he characterizes this argument as inflammatory, and asserts it was "such as to demand action of some sort on the part of the trial court to rectify the argument made by the state."

It is noted first that counsel made no request for action by the trial court except for a ruling on the objection. Second, a prosecutor may argue his belief in the sufficiency of evidence upon which to convict the defendant and the duty of the jury to convict upon a sufficiency of evidence, State v. Moore, 428 S.W.2d 563 (Mo. 1968); State v. Carter, 451 S.W.2d 340 (Mo.1970); State v. Paxton, 453 S.W.2d 923 (Mo.1970); and a fair reading of this extract of the argument is that the evidence was sufficient upon which to convict, and acquittal would be tantamount to finding defendant to be the owner of the shirts. Accordingly, it may not be said that the trial court was guilty of an abuse of discretion in overruling defendant's objection to the quoted argument.

Judgment affirmed.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All of the Judges concur.